## No. 11,631.

W. W. HANDLIN VS. THE H. WESTON LUMBER COMPANY, LIMITED.

Whilst mere civil or legal possession, not preceded by a real, actual possession on the part of the plaintiff or his authors, may be insufficient to support the possessory action, civil possession at the time of the disturbance is sufficient when preceded by an actual possession by plaintiffs or his authors for a year. The intention to possess preserves a civil possession continued after the natural is abandoned, unless usurped by another during the time required by law, or there be no possession for ten years. Against any disturbance in the meantime the civil possession will support a possessory action.

Where, the owner of a number of squares in the outlying districts of the city of New Orleans intersected by nominal streets has leased all of the squares to a single tenant, who has taken possession thereof and placed them under fence, the fact that the streets might be ultimately utilized for public purposes would not (so long as the public rights are dormant and the servitude is not exercised) break the continuity of the possession over and across the streets so as to take in and include (in conformity to the lease) the body of land leased as an entirety—so far, at least, as a trespasser is concerned.

Although proceedings in enforcement of unpaid taxes may be regular and vest a legal title in the purchaser at the tax sale made thereunder, an actual and real possession of the property does not instantly follow as the direct result of the adjudication. The fictitious legal seizin which the law makes the accompaniment of a completed act of sale would flow from such an adjudication, but the adjudication, though it would give rise to "a right to possession," would not operate of itself an actual and real corporeal possession of the property. The State does not occupy, in this respect, a position different from that of any other adjudicatee.

Act No. 80 of 1880 provides a statutory remedy for placing adjudicatees at tax sales in possession of the property purchased.

APPEAL from the Civil District Court for the Parish of Orleans.
Monroe, J.

Plaintiff alleged that the defendant company took wilful, forcible and illegal possession of his square of ground (No. 679) in the city of New Orleans, bounded by Short, Seventeenth, Washington and Dixon streets; that he had been in the undisturbed and peaceful possession, as owner of said property, through tenants and otherwise, for more than thirty years; that the same had been assessed in his name; that it contained twenty lots; that he had placed the property

26

in the hands of Shepard & Hunter for sale at one hundred dollars a lot, and advertised the same, when he discovered that defendant, well knowing plaintiff's right, had converted said square into a lumber yard, by erecting extensive tramways and wooden constructions, so as to render the delivery of any of said lots through Shepard & Hunter impossible; that he had suffered five hundred dollars actual damages, and two thousand dollars exemplary damages, and that defendant was liable to him at the rate of twenty-five dollars per month until the delivery of the property; that he urged as specific grounds of actual damages, the wrongful withholding of the possession of said property, two hundred dollars; the absolute suspension and prevention of plaintiff's operations for the sale of any of said lots, two hundred and fifty dollars, and the trouble, annoyance and expense of proceedings to regain possession, fifty dollars—he prayed that he have judgment for the delivery of possession of said land and quieting him in his possession, and that he have, also, judgment against defendant company for damages for twenty-five hundred dollars and for twenty-five dollars per month from the date of judgment until possession should be given him of the square of ground.

Defendant excepted that plaintiff could not maintain the action in its present form as a possessory action; that it was not true as the plaintiff alleged that he had the real and actual possession of the property described in his petition (in the possession of defendant) as owner for one year prior to the commencement of the action, much less had he had real and actual possession of the same continuously down to the commencement of the suit, but on the contrary the plaintiff not having had the real and actual possession required by law for the maintenance of the possessory action, had mistaken his remedy, which is only a petitory action. The court having referred this exception to the merits, the defendant answered, pleading first the general issue, and specially denying that plaintiff has had the real and actual possession of the property within a year, and that he is entitled to bring a possessory action. It admitted that it was then in possession of the property.

The District Court rendered judgment in favor of the plaintiff against defendant, decreeing that plaintiff be put in possession of the property, and condemning defendant to pay to plaintiff the sum of one hundred and twenty-five dollars damages, and the further sum of twelve dollars per year for the use of said property from March 3, 1894, till final delivery thereof.

Defendant appealed. Plaintiff has moved for an amendment of the judgment, praying that he be allowed five hundred dollars actual damages and such further damages as this court might think fit, and damages for a frivolous appeal.

*E. N. Whittemore* for Plaintiff and Appellee.

*Merrick & Merrick* and *H. M. Ansley* for Defendants and Appellants.

The opinion of the court was delivered by

NICHOLLS, C. J.  The defendant is shown to have taken possession of the property referred to in plaintiff's petition about March, 1894, only a month before the institution of this suit.  It is not pretended that it took possession under claim of ownership.  Whether the property belongs to plaintiff or whether it belonged to Dixon, as it attempted to show, it would in either event be a mere trespasser.  Plaintiff shows that in a partition made as far back as 1864, between one Allen and himself, they laid claim to the ownership of nine squares of ground, of which that described in the petition was one, and that in that partition that lot together with others was assigned to him; that in the act of partition their title was set out and referred to as being then of record in the conveyance books of the city of New Orleans.  That prior to the partition, the lots had been leased and had been occupied by their tenants, and that after the partition the lots which fell to the plaintiff were leased, fenced in and occupied by his own tenants; that for many years he had paid taxes upon the property; that he had sold to the defendant itself several of these lots in 1893, and that subsequent to this, negotiations had been in progress between them for the purchase of the property in question in this suit.  The defendant maintains that the possession of plaintiff's tenants, one of whom is still in possession of part of the property, did not extend over the whole property for the reason that the property consisted of several squares of ground intersected by streets; that the cabin which plaintiff's tenant occupied was not upon this particular square, and that actual possession of one square would not give constructive possession of the others.  A decision of the Su-

preme Court of Georgia, in the matter of the Georgia Pine, Investment and Manufacturing Company, reported in 20 Southeastern Reporter, 434, is relied upon as supporting the last mentioned contention.    The two squares and two parts of squares of ground set apart to plaintiff in the partition were by him leased as an entire body of land to one George Cammack, for the purpose of keeping off squatters.    The land was part of the outlying districts of the city, and the streets mentioned were merely nominal streets.    Proof of the existence of a right in the public to certain land for street purposes does not necessarily evidence an absolute divestiture of ownership therein, and the cutting off of a right to possession of the same until the servitude is called into active exercise (Civil Code, Art. 658).    As a matter of course possession of the streets could not be held by the plaintiff or his tenant adversely to the rights of the public, but so long as the rights of the latter were dormant, the fact that the streets might be ultimately utilized for public purposes would not break the continuity of the possession over and across the streets, so as to take in and include (in conformity to the lease) the body of land leased as an entirety to Cammack.    Certainly, at least so far as the defendant (who is a mere trespasser) is concerned, and so far as the question presents itself in this case, it would not do so.

Article 3437 of the Civil Code declares that: "It is not necessary that a person wishing to take possession of an estate should pass over every part of it; it is sufficient if he enters on and occupies a part of the land, provided it be with the intention of possessing all that is included within the boundaries;" Art. 3498 that "when a person has a title, he is presumed to possess according to the title and to the full extent of its limits," and Arts. 3442 and 3443 that "when a person has once acquired possession of a thing by the corporeal detention of it, the intention which he has of possessing suffices to preserve the possession in him, although he may have ceased to have the thing in actual custody either himself or by others. This intention of retaining possession is always supposed, where a contrary intention does not appear decidedly, so that although a person may have abandoned the cultivation of his estate he shall not therefore be presumed to have abandoned the possession, but shall be presumed on the contrary to have the intention of preserving it, and shall retain it in fact."    Defendant attacks plaintiff's claim very vigorously; he says that he only traces title to an act of partition

between himself and Allen; that any two persons without shadow of right to particular property could partition it.   That is very true, but this overlooks the fact that the actual ownership of the property is is not an issue in this case.   The action is possessory, not petitory. Whilst the act of partition might not suffice in a petitory action to establish plaintiff's ownership with Allen of the property, it does suffice to show, coupled with the action of their tenants, that they were *in possession under claim of ownership,* which is a very different matter.   The act of partition was admissible for that purpose.

Defendant contends, that at the moment it took possession of the square, plaintiff did not have the actual and real possession of it himself; that therefore he is driven to a petitory action, as actual and real possession by him, at the instant of the disturbance, was an essential condition precedent, by Art. 49 of the Code of Practice, to a possessory action.

This court has on several occasions held that "the mere civil or legal possession not preceded by a real actual possession on the part of the plaintiff or his authors is insufficient to support the possessory action.   But civil possession at the time of the disturbance is sufficient, when preceded by an actual possession by plaintiff or his vendors for one year " (Davis vs. Dale, 2 An. 205; Dickson vs. Marks, 10 An. 518; Searles vs. Costillo, 12 An. 203), and " that the intention to possess preserves a civil possession continued after the natural is abandoned unless usurped by another during the time required by law, or there be no possession for ten years.   Against any disturbance in the meantime, the civil possession will support a possessory action."   Ellis vs. Prevost, 19 La. 251.   We think that the plaintiff has brought his case within the principles enunciated in the decisions cited.

Defendant complains that he was not permitted by the court to introduce in evidence an act of sale of this property from W. W. Heard, State Auditor, to one W. A. Dickson, under date of 29th January, 1894, the sale reciting that it was made under Sec. 3 of Act No. 80 of 1888.

In the bill of exceptions reserved by the defendant to the exclusion of the act it is stated that "it was offered for the purpose of showing that if the plaintiff ever had possession of the property in question he had parted with that possession to the State of Louisiana, and, also, for the purpose of showing the payment of the taxes upon said

property; that thereupon plaintiff objected to the offer of defendant on the ground that it was an attempt to deny the title of ownership of the plaintiff, and to set up an outstanding title in some one else. Counsel for the defendant then unsuccessfully urged that said testimony was admissible to contradict the evidence of plaintiff to show that he had parted with possession, if he ever had possession, and for the purpose of showing the payment of taxes.''

The act in question described the property as '' a certain square of ground and improvements thereon, in the First District of the city of New Orleans, designated as square No. 769, bounded by Washington, Venus, Aglae and Short streets,'' and recites that said property was adjudicated to the State for unpaid taxes of the years 1882 and 1883, in the name of W. W. Handlin, on November 22, 1884, and recites that under the sale to Dickson of 29th January, 1894, he had paid certain taxes to the State in payment of the price of his purchase.

Defendant's evident theory was that the State having offered the property for sale for unpaid taxes under an assessment against W. W. Handlin, and having had the same adjudicated to it, the effect of the adjudication was to instantly operate divestiture of Handlin's ownership, and to place the State in the real, actual and legal possession of the property, and that therefore from that time forward (November, 1884) the State, and not Handlin, had the real and actual possession of the property. That it, the defendant, though a mere trespasser, had the right to show this change of possession, not on the strength of any rights which it had itself, but because of the absence in the plaintiff's case of the existence of one of the essential facts on which by law his right of instituting a possessory action was dependent.

Granting the right of a defendant trespasser to set up the outstanding possession of a person other than the plaintiff for a period of one year prior to the institution of plaintiff's action, we do not think the evidence rejected would (had it been introduced) prove the fact which defendant asserted it would have proven.

Assuming for the purposes of the argument that the proceedings in enforcement of Handlin's unpaid taxes were strictly legal and regular and vested a valid title in the State, it would by no means follow that an actual and real possession of the property by the State would instantly follow as the result of the adjudication. Un-

questionably the fictitious legal seizin which the law makes (Civil Code, 2479) the accompaniment *ipso facto* of every completed act of sale would flow from such an adjudication, but this is something other than an actual and real possession by the purchaser.   Bird vs. Jones, 5 An. 645.   The adjudication would give a " right to possession," but would not operate of itself an actual real corporeal possession.   The State does not occupy in this respect a position different from that which any other adjudicatee at a tax sale would occupy. We have in the course of repeated decisions been called upon to pass upon rights of parties based upon tax adjudications as affected by the fact that no actual change of possession or ouster of the original owner's possession had followed the adjudication.

The State not having followed up the adjudication by any attempt at taking possession, its vendee Dickson would find himself in no better situation than a direct adjudicatee at a tax sale.   He would have to make his right to possession available through the statutory remedy provided for that purpose in Sec. 5 of Act No. 80 of 1888, and his possession, if given, and when given, would have to date not from November, 1884, but from the day it should have been granted to or taken by him.   As Dickson himself did not take possession under the act from the State to him, and under the act of adjudication to the State, the introduction in evidence of the act by the State to him would have been of no service for the purpose assigned by him.

We do not think defendant's position before the court entitles him to consideration.   He was well aware of plaintiff's rights when he took possession of the property, and did so only when dissatisfied with the price which plaintiff asked for the property, in the negotiations between them for a sale, evidently basing itself upon what it conceived might be the result of Dickson's purchase from the State.   If Dickson has any rights he must make them available himself in a proper manner; neither he through the defendant nor the defendant through him can take anything by defendant's illegal action.   Defendant took possession of the property without any legal right so to do.

We can not increase the judgment of the District Court to the extent prayed for by plaintiff.   It is true that the act of the State to Dickson offered by the defendant refers to Handlin as the owner of the property in 1882, 1883 and 1884, but in this suit we are concerned

with the legal wrong done to him through a disturbance of his rights of possession, and not of his rights of ownership.

The defendant without any legal justification has driven the plaintiff to litigation in two courts, has occupied his time and his attention, and forced him to the employment of counsel for the vindication of his right of possession. We think the plaintiff entitled to an increase to the judgment to some extent, and that the amount for which the defendant should be held responsible per year for the use of the property from the 3d of March, 1894, till final delivery thereof should be thirty-six dollars instead of twelve dollars. Should defendant deem this amount too high it will be within his power to immediately vacate the premises. It is hereby ordered, adjudged and decreed that the judgment appealed from be amended by increasing the amount of damages decreed to be paid by the defendant to plaintiff from one hundred and twenty-five dollars to two hundred dollars, and by increasing the amount per year for the use of the property from 3d March, 1894, to final delivery thereof to the plaintiff from twelve dollars per year to thirty-six dollars per year, and that as so amended the judgment appealed from be affirmed.

Rehearing refused.