BRUNOT, J.
 

 This is a petitory action and, from a judgment rejecting the demands of plaintiff and decreeing the defendants to be the true and lawful owners of the property described in the petition, the plaintiff appealed.
 

 The petition alleges that plaintiff is the owner of the S. E.
 
 Vi
 
 of section 22, and the east % of N. E.
 
 Vi
 
 of section 2T, township 23 north, range 11 east, West Carroll parish, La.; that it acquired said property from the board of commissioners of the Tensas Basin Levee District on November 9, 1898; that the deed of conveyance is of record in Notarial Book D, page 168, conveyance records of West Carroll parish; that the author of its title acquired the property from the state of Louisiana on June 14, 1889, by deed of record in Book C, page 9; that the state of Louisiana acquired the property at tax sale for the unpaid taxes due thereon by the estate of Thomas Wise, for the year 1885, the tax deed being of record in Notarial Book B, page 196; and that Thomas Weiss entered or purchased the property from the United states on September 9, 1848, the abstract of entry being recorded in Notarial Book A (o), pages 41 and 42. The petition alleges that defendants are asserting claim to said property, and are attempting to take possession of it; that they are without title to, or right to possession thereof; and, that' the basis of D. J. Anders’ title was the purchase by him of a litigious right. The prayer is for a judgment recognizing plaintiff as the true and lawful owner of the property and entitled to the possession thereof; and ordering the cancellation and erasure from the conveyance records of West Carroll parish, of the conveyances executed to D. J. Anders.
 

 Defendants filed a motion to.elect, alleging therein that the petition contained inconsistent demands, viz.: A petitory action, a possessory action, and an action in slander of title. Plaintiff elected to proceed in the petitory action, and defendants answered the suit, asserting ownership of the^roperty and possession thereof, under a title translative of property, for more than 10 years, and that they and their authors have been in the open and uninterrupted possession thereof, with and without title for more than 30 years.
 

 They allege the nullity of the tax sale by which the state acquired the property for various reasons, viz.: First, because of improper assessment; second, because the state and parish taxes were not extended on the assessment rolls; third, because the tax debtors were not notified as required by the Constitution and laws of the state; fourth, because publication of delinquent taxes was not made known to unknown owners at the time of the adjudication'; fifth, because a tutor ad hoc was not appointed to represent the minors who owned an interest in the property; sixth, because the property was sold for taxes and costs that were not due and owing thereon; seventh, because the property was assessed
 
 to
 
 the estate
 
 oí Thom
 
 a§ Wise and not in the name of the heirs of the succession; eighth, because notice that the taxes were due and notice of delinquency was not given; ninth, because the property was dually assessed; and tenth, because the 'taxes on the property were paid before the date of sale.
 

 Several of these grounds are mere repetition; The first and seventh grounds 'allege improper assessment. The third, fourth, and eighth grounds merely amplify the alleged failure to give proper notice. Defendant D. J. Anders denied the alleged purchase of a litigious right. The defendants pray for a rejection of plaintiff’s demands, and for the cancellation and erasure of the tax deed and of the deeds from the state of Louisiana to the Tensas basin levee district and from the Tensas Basin levee district to the Tensas
 
 *97
 
 Delta Land Company, Limited. Defendants prayed for oyer of these deeds. Plaintiff answered that the case was at issue, the deeds were public documents, and not in its possession.
 

 Plaintiff thereupon pleaded the three years prescription in bar of defendants’ attempt to annul the tax sale made by the sheriff* and tax collector of West Carroll parish, of the property described in the deed dated July 1, 1866, and recorded in Notarial Book B, page 196, of the conveyance records of West Carroll parish.
 

 Plaintiff’s title rests upon the validity of that sale.
 

 This court has repeatedly held that article 233 of the Constitution of 1898 is a statute of repose. We quote the following from that article:
 

 “No sale of property for taxes shall be set aside for any cause, except on proof of dual assessment, or of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceedings to annul is instituted within six' months from service of notice of sale, which notice shall not be served until the time of redemption has expired, or within three years from the. adoption of this Constitution, as to sales already made, and within three years from the date of recordation of the tax deed, as to sales made hereafter, if no notice is given.”
 

 Tax sales made prior to the adoption of the Constitution of 1898 cannot be attacked after the lapse of three years from that date, except on proof of dual assessment or payment of the taxes for which the property was sold, prior to the date of the sale, or where the tax debtor was in actual possession of the property at the date of the adoption of the Constitution of 1898, and has remained in possession thereof continuously since that date. Armstrong v. Progressive Realty Co., 128 La. 727, 55 So. 334; Carey v. Cagney, 109 La. 77, 33 So. 89; In re Seim, 111 La. 562, 35 So. 744; Bartley v. Sallier, 118 La. 93, 42 So. 657; In re Sheehy, 119 La. 609, 44 So. 315; Xeter Realty, Ltd., v. Basler, 140 La. 891, 74 So. 185.
 

 In this case defendants must prove that the tax debtor or his heirs were in possession of the property when the Constitution of 1898 was adopted, and that they have since remained in continuous possession thereof, to avoid the effect of the three years prescription pleaded by plaintiff. If the proof does not establish the continuous possession mentioned, all of the alleged nullitiés of the tax deed are concluded thereby, except as to dual assessment and timely payment of taxes.
 

 This suit was filed in 1918. The assessment rolls showing the assessment of the property described in the petition for the years 1885 and 1886 and from 1899 to 1918, both inclusive, are in the record, and these rolls show that in 1885 the property was assessed to the estate of Thomas Weiss. In 1886 it was assessed in the name of Thomas Weiss, as land sold to the state for the taxes of 1885. The title to the property was then in the state or the levee board, and it was not again assessed until the levee board sold it to the plaintiff in 1899. It was assessed to plaintiff that year and each succeeding year, including 1918, and plaintiff paid the taxes thereon, for each of these years. In 1913 J. B. Bartlett had the same property assessed to him but he did not pay any tax thereon.
 

 Defendants have introduced the testimony of Ben Bartlett, L. J. Franklin, L. E. Henderson, Bob Hill, John Hill, Warren Kenngy, and John Terry for the purpose of proving continuous possession by the tax debtor or his heirs from a date prior to the adoption of the Constitution of 1898 to the' date of the filing of this suit.
 

 Ben Bartlett, one of the heirs of Thomas Weiss, testified that his aunt occupied the property in 1886. Several years thereafter the dwelling house burned. In 1896 he built a house on the place and moved into it. He remained there until 1900. He again occu
 
 *99
 
 pled tlie place in 1903, but removed from it before tbe expiration of that year. Tbe balance of the year it was occupied by one Howell Tillery. In 1904 a man named Fielding Bullen went on tbe place. He occupied it until 1906. It was vacant in 1907. In tbe winter of that year Bullen started to move back on tbe place, but it appears that tbe neighbors objected, and the bouse was again burned. Tbe place remained vacant until 1909, when tbe witness built a shack on it out of cull boards that bad been given to bim by bis employer. He says, on cross-examination, that while on tbe place be exercised possession of very little of it, just what be could fence in, about six acres. This witness admits that tbe deed of the property from himself to D. J. Anders, one of the defendants was actually made for no consideration whatsoever; “not a nicklebut in consummation of an arrangement whereby Mr. Anders was to obtain a title to one-half of tbe property, if be succeeded in establishing and maintaining the title of the heirs thereto.
 

 Tbe witness says:
 

 “Mr. Anders was to take tlie property for half, if he gained tbe title, be was to have half of the property.’’
 

 Bartlett is the principal witness for tbe defendants, and be admits that tbe property was unoccupied and vacant during tbe years 1907, 1908, and 1909, but says that be sold tbe timber off of tbe place to L. E. Henderson.
 

 L. J. Franklin testified that be is not sure that tbe place was occupied in 1909. He says Bartlett lived on it in 1903; that Bartlett’s occupancy was not continuous; and while be occupied tbe place bis possession did not extend over more than 20 or 30 acres. L. E. Henderson testified that no one was in possession of tbe property in 1908; that later on Bartlett went to work for bim and built a small bouse on tbe place which be occupied during tbe five years be was in witness’ employ. Henderson also testified that Bartlett’s statement that be sold timber off of tbe place is untrue.
 

 Tbe testimony of John Hill, Bob Hill, and Warren Kenney is of little value. John Hill’s memory is vague and bis answers uncertain, except in response to a few leading and suggestive questions that are not sufficiently material to demand serious consideration. Bob Hill rented the place from Bartlett and lived on it for two years, 1901 and 1902.' He does not know anything definitely concerning tbe ownership or possession of the property. Warren Kenney’s testimony is principally hearsay. It is a recital of what other people told him.
 

 John Terry testified that Mrs. Osborne occupied tbe place in 18S8, but left it ifi 1889 and that thereafter no one lived on it until 1896. During those years tbe place was vacant, tbe fences down and tbe land lying out. Tbe witness says:
 

 “It was just a waste place until Mr. Bartlett went back about 1896.”
 

 We do not consider the testimony of Mr. Bartlett, on recall, as helpful to tbe cause of defendants. His dates and some of bis statements seriously conflict with tbe testimony of tbe other witnesses offered by defendants; even with testimony previously given by himself. In tbe absence of explanation of any kind as to why be should vary bis testimony, we cannot give it that credence it would otherwise be entitled to.
 

 In rebuttal tbe plaintiff introduced tbe testimony of Judge John R. McIntosh. With reference to continuous possession of tbe property, Judge McIntosh says that the property was vacant in 1892; it was not occupied or cultivated; “it was lying waste — an old field, with no evidence of occupancy whatsoever.” Witness says that about 1899 be was on tbe place and it was unoccupied. He rode bis horse into tbe shanty on the place in 1905, seeking protection from a heavy rain.
 
 *101
 
 The shanty was in a dilapidated condition and not habitable.
 

 A careful reading of the testimony leaves a serious doubt in our minds as to whether the property was occupied by any one when the Constitution of 1898 was adopted, and it convinces us, beyond any doubt, that on several occasions thereafter, and for one or more years at a time, including one period of three years, no one was in actual possession of or occupied the property. The three years prescription is therefore properly jdeaded in this case, and is á bar to defendants’ attempt to annul the tax sale upon grounds other than dual assessment or the payment of the taxes due on the property prior' to the tax sale thereof.
 

 Defendants rely upon the assessment rolls alone as proof of the alleged dual assessment and the timely payment of the taxes due on the property. There is no other evidence in the record, and these rolls are shown to have been forged and altered; the alteration being made long after the tax sale of the property involved in this suit. The testimony of Judge McIntosh, alone, sufficiently establishes this fact. The testimony is as follows:
 

 “Q. What position do you hold in the parish of West Carroll, or the district of which it is a part?
 

 “A. I am judge of the Seventh district court.
 

 “Q. How long have you held that position?
 

 ‘‘A. Since 1907.
 

 “Q. Prior to that time, in what were you engaged ?
 

 “A. I was prosecuting attorney from 1900 to 1907.
 

 “Q. You had been practicing law?
 

 “A. Yes, sir.
 

 “Q. Judge, are you familiar with the matter of the assessment of Simon Witkowski, as carried on the rolls of the parish of West Carroll for the year 1885?
 

 “A. I am.
 

 “Q. Please state what you know with reference to that assessment, as originally made, and as it now appears.
 

 “A. I will state that in either 1896 or 1897 Mr. Bartlett came to my office in the town of Floyd, La., and asked me if I knew that the lands — the Wise lands — at the time of the sale in 1885 were dually assessed and the taxes paid. I told him I did not know such to be the case. I was then in the abstracting business and doing quite a considerable amount of abstracting for the Tafts, and others purchasing land in this parish at the time. I had just previously made an abstract of the assessment rolls, and I had made an abstract of this property for the Tensas Basin levee board, and I told Mr. Bartlett that I was sure that there was no dual assessment of that land for those years, and I asked him in whose name the assessment was made, and he said in Witkowski’s. I said that I was quite sure that I didn’t make a mistake in my abstract, but I would go and make a re-examination of it. I went into the assessment room — then occupied by the assessor and by Mr. S. A. Conn, who was representing the Taft people — and took the assessment roll of 1885, and made an examination of this roll, and I found from an examination of the roll, a change in the assessment of the Samuel Friedlander land. ’ That change had just been recently made and the ink was barely dry. It was a different character of ink, it was a stronger ink than the ink that was used on the original record, and a different handwriting. In this Friedlander assessment of the N. E. 14 of 27, showed a change at the end of the second line of the assessment of the Fried-lander land. I then, afterwards, some time after, in making an investigation into some other lands, secured the Samuel Friedlander tax receipts—
 

 “(Counsel for the defendant objects to the introduction of these tax receipts until it is shown that it is the tax receipt of Samuel Friedlander. Objection overruled.)
 

 “Q. Does the tax receipt, which you have just explained, contain any description of the property known as the E. % of the N. E.
 
 %
 
 of section 27, which has been added to the assessment of Samuel Friedlander?
 

 “A. The tax receipt itself does not show the N. E. % of section 27. Now I examined the rolls of both the sheriff and clerk in connection with the Friedlander assessment, and both of those changes of the N. E. % of 27 were of recent make and in a different handwriting, and showed very conclusively that I did not make a mistake in my abstract of the assessment rolls just a few days previous. The records themselves will show very clearly that the N. E. % of 27, 23-11, the last two lines of the Fried-lander assessment was added to his assessment.’
 

 “(Counsel for defendant objects to the witness stating his opinion as to what the records show.)
 

 
 *103
 
 “A. Before I made this, I was quite sure that' Friedlander, from, my recent examination of the r.oll, that the 160 was not assessed to Friedlander, and the change, I say, was made within just a short time before I made the reexamination of this roll for Mr. Bartlett.
 

 “Q. As evidenced by the tax receipts, he did not pay taxes on it, did he?
 

 “A. The tax receipt that I got from the Friedlander estate shows that he did not pay taxes on it, and that tax receipt that I secured from Friedlander was in accordance with the assessment of Samuel Friedlander for the year 1885, as shown by the assessment roll when I first made the abstract of this roll. Now, then, I made an examination of the tax roll relative to the Witkowski assessment, and on the third line of the Simon Witkowski assessment, page 39, it verified my abstract and it showed very clearly — the roll showed — that, the land in Tp. 23, R. 10, had been changed to 23-11.
 

 “Q. Judge McIntosh, please state whether or not the Witkowski assessment, as it had been changed, as testified by you, embraced any of the Wise lands ?
 

 “A. As it stands today, it does.
 

 “Q. Please state whether, prior to such change, it embraced any of the description of any of the Wise lands.
 

 “A. When I made my first abstract of this assessment roll it did not, and my second examination of the rolls for Mr. Bartlett showed very clearly that the rolls had been changed as to the Friedlander assessment, showing and also as to the Witkowski assessment, showing 160 acres had been dually assessed to the Friedlanders, and I believe all of it — or a good portion of it — to Witkowski. I could swear positively that those changes were made, both in the Witkowski assessment and also in the Friedlander assessment.
 

 “By the Court: Q. Did you make any inquiry at that time of the state auditor as to his rolls ?
 

 “A. They were in the same mutilated condition, yes, sir; and they will show a change. I never made a personal examination — I don’t know — but I did inquire, and they showed the change — that and some other land. But I know these rolls here were changed, and changed in a very short period of time. The change in the Witkowski assessment was in the township, on the last line of page 40. It was originally 22-11, and it was changed to township 23- -11.
 

 “By Mr. Sholars: Q. Did Mr. Witkowski at that time own any lands in 23-11?
 

 “A. Yes, sir; but not this land, and after I had made the re-examination I informed Mr. Bartlett of the change. He was contemplating a suit at that time, but the suit was never filed.
 

 “Q. Did you advise him as
 
 to
 
 his rights, because of this alleged dual assessment?
 

 “A. I did not. I only told him that the property was not dually assessed, as he thought, originally, but it had been changed so as to make a dual assessment.”
 

 Plaintiff offered copies of the assessment of Simon Witkowski and Samuel Friedlander for the years 1884 and 1885, and the tax receipt to Samuel Friedlander for the year 1885, describing the property on which the taxes for the year 1885 were paid by him. These offerings corroborate the testimony of Judge McIntosh to a point approximating certainty. If there was not a dual assessment, the contention that the taxes were paid before the sale of the property must fall, because defendants make no pretense that they or tlie heirs of Thomas Weiss paid those taxes. Their claim is that Witkowski and Friedlander paid them because the property, belonging to the Weiss estate, was also assessed to them in 1885. The testimony of Judge McIntosh and the Friedlander tax receipt destroy defendants’ contentions and impose upon this court the duty of reversing the judgment of the lower court.
 

 For these reasons the judgment appealed from is reversed, and it is now decreed that plaintiff is the true and lawful owner of the property described in the petition, and that it be quieted in the full and undivided possession thereof. The costs of this appeal to be paid by appellees.
 

 O’NIELL, C. J., dissents.
 

 ST. PAUL, J., concurs in the decree.