(115 So. 641)

No. 28840.

## LEVENBERG v. SHANKS et al.

Jan. 18, 1928.   Rehearing Denied Feb. 13, 1928.

*(Syllabus by Editorial Staff.)*

1. **Taxation** ⬦➡805(4)—**Peremption established by Constitution does not accrue when owner at time of tax sale remains in corporeal possession of property, but does accrue if possession is merely civil under title deed, or construction following termination of corporeal possession (Const. 1921, art. 10, § 11).**

The peremption established for tax sales by Const. 1921, art. 10, § 11, does not accrue when the owner at the time of the sale remains in corporeal possession of the property; but it does accrue if the owner's possession is merely the civil possession flowing from a title deed, or constructive possession following the termination of corporeal possession.

2. **Taxation** ⬦➡810(3)—**In purchaser's suit to quiet tax title, evidence held not to show corporeal possession in defendants sufficient to preclude peremption (Act No. 101 of 1898; Const. 1921, art. 10, § 11).**

In suit by purchaser of land to quiet her tax title pursuant to Act No. 101 of 1898, and Const. 1921, art. 10, § 11, evidence *held* not to show corporeal possession of defendants sufficient to preclude the accrual of peremption so as to permit quieting of title.

3. **Taxation** ⬦➡810(3)—**Evidence held not to show owner's payment of taxes prior to land tax sale so as to preclude accruing of peremption (Act No. 101 of 1898; Const. 1921, art. 10, § 11).**

In suit instituted under Act No. 101 of 1898, to quiet title after the lapse of more than three years from the recordation of the tax deed, evidence *held* not sufficient to show that the owner paid the taxes prior to land sale so as to preclude accruing of peremption in accordance with Const. 1921, art. 10, § 11.

4. **Covenants** ⬦➡130(4)—**On breach of warranty in land title, purchasers held entitled to amounts paid, with interest from dates of payment.**

On breach of vendor's warranty in land title, shown in suit by a third person to quiet title by the court's finding title in such third person, purchaser *held* entitled to amounts paid for land, with interest from dates of payments.

5. **Covenants** ⬦➡115—**That party asserting breach of warranty in land title was himself responsible, hence not entitled to damages, must be specially pleaded, and, unless pleaded, evidence thereon is inadmissible.**

That the party asserting breach of warranty in land title was himself responsible for such breach is a matter of special defense, and must be specially pleaded, and, unless so pleaded, evidence thereon is inadmissible.

Appeal from Civil District Court, Parish of Orleans; Hugh C. Cage, Judge.

Suit by Mrs. Cecile Levenberg against William C. Shanks and others to quiet a tax title, in which defendants called their vendor, the New Orleans Land Company, in warranty, and sought judgment against it. From the judgment, defendants and warrantor appeal. Judgment amended, and affirmed as amended.

W. O. Hart, of New Orleans, for appellant New Orleans Land Co.

L. A. Molony, of Hammond, for other appellants.

Wm. Winans Wall, of New Orleans, for appellee.

OVERTON, J.   This is a suit to quiet a tax title, instituted under Act 101 of 1898, after the lapse of more than three years from the recordation of the tax deed.   The land that the tax deed purports to convey is lots 47, 48, 49, and 50, in square No. 233, in the Second district of New Orleans, bounded by Memphis and Vicksburg streets, Harrison avenue and Bragg street.   Plaintiff relies, in part, on the peremption of three years, prescribed by section 11 of article 10 of the Constitution of 1921, to obtain judgment quieting her tax title.

The defenses to this action are that the peremption of three years, relied upon by plaintiff, is not well founded, for the reason that defendants have been in the actual possession of the property since the date they acquired title to it, which was in May, 1922,

and that their author in title, the New Orleans Land Company, was in actual possession of it at the time of the tax sale, and up to the time of the transfer by that company to defendants; that the tax sale, which was made in 1922, for the taxes of 1921, is null, because the property was assessed in the name of William A. Clark, who was not the owner of it, instead of to the New Orleans Land Company, which then owned it; that the sale is also null, because no notice of intention to sell for delinquent taxes was given to the New Orleans Land Company, the owner of record at the time of the sale; and that the sale is also null, because it was made under a defective advertisement in the name of William A. Clark. Though not pleaded, it is also urged, under the evidence adduced on the trial, that the taxes for the year 1921, for which the property was sold, were paid prior to the sale.

The defendants called their vendor, the New Orleans Land Company, in warranty, and asked for judgment against it, in the event plaintiff's tax title is quieted, for $1,-200, which represents the purchase price paid by them for the property, with legal interest thereon from May 2, 1923, the date of their purchase; for $100, which represents the taxes paid by them; and for $3,800, which they aver is the loss they will sustain if deprived of the property, that amount being the increase in the value of the property since defendants purchased it.

The New Orleans Land Company appeared in response to the call in warranty, and, for answer to plaintiff's demand, adopted the defenses urged by defendants, and, for answer to defendants' demand for a moneyed judgment against it, denied all liability to them.

In our view, the first question that should be considered is whether the peremption of three years, pleaded by plaintiffs, has any application to this case. This peremption is established by section 11 of article 10 of the Constitution of 1921. The section, so far as is pertinent, reads as follows:

"No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption shall have expired and within three years from the date of the recordation of the tax deed, if no notice is given. * * * *"

[1] It is obvious from this section, if the peremption established by it is applicable to the facts of this case, that it bars every defense urged against the quieting of the tax title, save that of prior payment of the taxes for which the property was sold. But the peremption established by that section does not accrue when the owner, at the time of the tax sale, remains in possession of the property. His continuing in possession, notwithstanding the sale, is a continuous protest against the sale. This was so held under similar provisions in the Constitutions of 1898 (article 233) and 1913 (article 233), and the ruling is equally applicable under the provision contained in the present Constitution. Carey v. Cagney, 109 La. 77, 33 So. 89; Gauthreaux v. Theriot, 121 La. 872, 46 So. 892, 126 Am. St. Rep. 328; Charbonnet v. State Realty Co., Limited, 155 La. 1044, 99 So. 865; Fellman's Heirs v. Interstate Land Co., 163 La. 529, 112 So. 405. However, the possession here referred to is not the civil possession that springs from a title deed, nor the constructive possession that may follow when actual corporeal possession ceases. The possession here referred to, as said in Carey v. Cagney, supra, and as in effect held in Tensas Delta Land Co. v. Anders, 158 La. 94, 103 So. 522, is the corporeal detention of the property. No other possession than actual corporeal possession is sufficient to operate as a continuing protest against the tax title, and thereby prevent the peremption from accruing.

The only evidence that defendants and the warrantor produced to show actual possession of the property is that the warrantor employed a surveyor, about 1904 or 1905, to subdivide a large tract of land which it had acquired, and which is located in the city of New Orleans, into blocks and lots and to make a plat of the same. The lots in question once formed a part of that tract. Several years after the survey had been made, a Mr. Wirth, who was one of the warrantor's superintendents, occupied a part of the tract as his home, and lived there for many years. On what part of the tract he lived does not appear, but while there he looked after the land. After the tract had been subdivided and platted, the warrantor sold lots out of the subdivision to various parties, including the defendants, who acquired their lots some eight or nine months after the tax sale, which was made some seventeen or eighteen years after the tract had been subdivided.

[2] The streets created by subdividing the tract into blocks were not mere nominal streets as was the case in Handlin v. H. Weston Lumber Co., Limited, 47 La. Ann. 401, 16 So. 955, where the plaintiff without reference to blocks and streets, which had not yet come into actual existence, though platted, leased the entire tract as one body, and where it was held that the possession acquired by him, through his tenant, who took possession of a part of the tract, was sufficient to maintain a possessory action as to one block, included in the lease, though not occupied by the tenant. In this case the warrantor sold lots out of the subdivision with reference to the plat, and, as a result, streets appearing on the plat were necessarily dedicated to the public, and, for aught that appears, some of them were in actual use in gaining access to lots which had been sold. As it does not appear on what part of the tract Wirth lived, and as he did not occupy any part of it until several years after the subdivision had been created, we are not prepared to say that his occupancy, which we assume was as tenant of the warrantor, gave the latter possession of the lots in controversy, since the property occupied by Wirth may well have been cut off from these lots by one of the streets. But be that as it may, defendants purchased these lots some seven or eight months after the tax sale had been made and recorded, and did not make their attack on it until more than three years after they had purchased the lots. During that period they made no attempt to take actual possession of the property, but permitted the lots to remain idle and vacant. Therefore the possession that they had during that period was not actual corporeal possession, and hence the peremption pleaded accrued, and is good as to all the attacks made by plaintiff on the tax title, except that of prior payment of the taxes for which the property was sold, a ground of attack which we shall next consider.

[3] The evidence does not show that the taxes of 1921, for which the property was sold, were paid prior to the sale. The only evidence relied upon by defendants to show prior payment are two tax research certificates, issued by state and city officials, in July, 1925. The certificate issued by the state shows that taxes were paid to the state on two of the lots, in the name of Shank & McKinney, on December 4, 1922, and also in December, 1923 and 1924, on property in the square in which the lots are located. It also shows that the warrantor herein paid taxes on the balance of the square, but when the payments were made does not appear. Under the plain terms of section 11 of article 10 of the Constitution, quoted supra, the payment must be shown to have been made prior to the sale. If we assume that the payment made on two of the lots, on December 4, 1922, which it may be said was not made to plaintiff to redeem the property, but to the state in the settlement of taxes, was for the taxes

of 1921, still it is manifest that the payment was made more than two months after the sale, and hence is of no avail to defendants. As to the remaining payments, it is equally clear that they were made long after the sale, or that their dates do not appear. As to the certificate issued by the city of New Orleans, it is unnecessary to consider it, for the lots were not sold for city taxes. Our conclusion is that the evidence relied on to show prior payment fails to show it.

[4] With reference to the call in warranty, defendants have abandoned their claim for $100, the taxes alleged to have been paid by them, and also their claim for $3,800, the loss of the increase in the value of the property, but insist upon the return of the $1,200, paid by them for the property, or $600 to each, with legal interest from May 2, 1923, the date upon which the two deeds of sale executed, recite that $600 was paid by each. The deeds executed were warranty deeds. Defendants are therefore entitled to the return of the amounts paid by them for the property, with legal interest thereon from May 2, 1923, the date on which the amounts were paid.

[5] Before closing, it may be said that the warrantor complains of a ruling made by the trial judge, excluding from the evidence, upon objection made by defendants, a contract to sell, or bond for deed, made by it with W. A. Clark, to convey these lots to Clark. The purpose of the offering does not appear from the record, but it appears from the warrantor's brief that the purpose was to show that Clark had assumed all taxes on the property after the year 1915, the intention being to show by other evidence, not tendered, that defendants had acquired Clark's rights in the contract, and had assumed his obligation to pay the taxes, which included those for which the property was sold. The object had in view was to defeat defendant's demand for a moneyed judgment against the warrantor

for the return of the remaining items sued for, by showing that the sale was the result of defendants' own fault in not paying the taxes. In our view the ruling was not erroneous, for the warrantor pleaded no such defense to the demand in warranty. If defendants assumed the payment of the taxes for which the property was sold, the warrantor should have specially pleaded the assumption, for it is a defense in avoidance of its obligations in warranty.

In the trial court, there was judgment in favor of plaintiff, quieting her tax title and recognizing her as the owner of the property, and also judgment in favor of the defendants Shanks and McKinney for $1,200, $600 to each of them, with legal interest thereon, but without mentioning the date, and rejecting all other demands of defendants against the warrantor. The judgment will have to be amended so as to allow legal interest from May 2, 1923, the date the purchase price was paid. In all other respects the judgment is correct.

For the reasons assigned, the judgment appealed from is amended by allowing legal interest on said sum of $1,200 from May 2, 1923, until paid; the costs of this appeal to be paid by the warrantor.