Dupont & Dupont, of Plaquemine, for appellant.

R. F. Walker, of Baton Rouge, for appellee.

LE BLANC, Judge.

This is a petitory action in which the plaintiff asks to be recognized as the owner of a certain tract of land situated in the fourth ward of the parish of Iberville, title to which, she avers, was acquired by her at public sale when the same was alleged to have been sold under an order of court in the succession proceedings of Houston L. Staring, in order to pay debts of his estate. In her petition, plaintiff also sets out that John Joseph, who is without any legal title, is in the physical possession of the property, and she prays that he be ordered to deliver the same to her. John Joseph, the only defendant in the cause, is a son of Victor Joseph, deceased, who formerly owned the property.

The defendant first filed an exception of nonjoinder based on the proposition that, as there had been a former judgment rendered in the district court, concerning the same property, in which his coheirs were parties defendant, they should also be joined in the same capacity with him in this proceeding. This exception, after a hearing, was overruled by the lower court. Counsel for defendant at the time reserved a bill to the ruling of the court, but makes no reference whatever to the exception in this court, and we take it that it has been abandoned.

## WITSON v. JOSEPH.
No. 1388.

Court of Appeal of Louisiana.
First Circuit.

Jan. 21, 1935.

Defendant next filed an exception of no cause or right of action. This exception, as we understand from the reasons assigned by the lower court in overruling the same, was grounded on the failure of plaintiff's petition to have disclosed the entire chain of title under which she claims the property. The court held that, inasmuch as the petition had set forth an acquisition under a deed, which on its face appeared to be an act translative of property, that was sufficient to sustain her cause of action. We note in the extract from the minutes of court of date March 21, 1933, the day on which the exception was overruled, that counsel for defendant again reserved a bill to the ruling of the court, but in this court he makes no mention of the matter, and seems to have acquiesced therein. We therefore do not feel called on to review the question brought up by the exception.

The defense on the merits is, first, that plaintiff herself has not a good title to the property, as the deed under which she claims, whilst purporting to have been a sale of the property for cash, by the executors of the estate of Houston L. Staring, in order to pay debts, was nothing but an indirect attempt on their part to validate a transfer that had been made by them under private sale, which the court had, in a previous suit between the parties, declared null and void, and that in truth and in fact no cash had been paid over to the executors. Secondly, it is urged that the purported title in the estate of Houston L. Staring is invalid, the same having been derived from his father, Joseph Staring, who had acquired the same from Emanuel or Manuel Falcon, an alleged purchaser at tax sale, and which tax sale was in itself null and void for failure of the tax debtors to have received proper notice of tax delinquency and also because of insufficiency of description. The trial court held that the property had been properly sold by the executors of the estate of Houston L. Staring, to pay debts, and that, as to the tax sale of the property through which the title was derived, any defects and irregularities therein have been cured by the constitutional prescription of three years against attacking such sales. These, therefore, are the matters which we have to review on the present appeal.

The history of this litigation takes us back to the month of August, 1902, at which time Victor Joseph and his wife, Charlotte Joseph (father and mother of the defendant and his seven brothers and sisters), appeared before a notary public in the town of Plaquemine, La., for the purpose of executing a mortgage in order to secure a note of $364.

The mortgage was made in favor of Jas. M. Rhorer, but it is not disputed that the latter appeared in the act merely for the purpose of accepting the mortgage for some one else. The evidence satisfies us that it was being taken for Joseph Staring to secure a store debt that had been contracted with him by Victor Joseph. In describing the property to be mortgaged, however, the notary, apparently through error, described a property which belonged to Antoine Joseph instead of that of Victor Joseph, and so the mortgage remained, as far as this record discloses. The district judge was of the opinion that it had not been sufficiently shown that the property mortgaged did not belong to Victor Joseph, but in this we disagree with him. We think that the testimony of Mr. Charles I. Dupont, Jr., defendant's attorney, who examined the conveyance records with the purpose of ascertaining if Antoine Victor ever sold the property described in the act of mortgage referred to, to Victor Joseph, furnishes sufficient proof that he did not, and besides, it would seem a bit singular, if Joseph Staring did have a mortgage on Victor Joseph's property, that he would not have foreclosed it with the view of acquiring it in that way rather than in the indirect manner he attempted through a tax deed.

About a month or two after the mortgage was executed in August, 1902, Victor Joseph died. His widow and children continued to live on the property and cultivated it. The widow and John, defendant herein, both say that they stayed on it eight years after Victor's death, at which time the widow remarried and she moved off. They both testify that they made payments to Staring on account of the indebtedness each year. When asked if he had anything to show for those payments, the defendant answers: "Yes; receipts." His attorney then asked him: "Are those receipts you refer to the ones we used during the last trial?" and he answers: "Yes, sir." The receipts were not offered in evidence in the trial of this case, but we would hardly believe that counsel would have asked that question if they were not actually filed in the suit he had reference to, and certainly the question as put, to elicit the testimony, would not have gone unchallenged if it were not a fact that the receipts were really there. Their existence positively tends to substantiate the testimony of defendant and his mother on this point. Without the receipts before us, we, of course, are unable to say what the amounts paid on account were, but, if defendant and his mother are to be further believed, they were

rather substantial payments, as they always included an amount sufficient to pay the taxes which they intrusted wholly to Mr. Staring.

After ·defendant's mother had married again and moved off of the property, defendant remained on it a year longer, when he left to go swamping. His brothers and sisters had, in the meantime, moved away, and apparently left him in charge of the property. There was still at the time a balance due on the Staring indebtedness, so he arranged· with Mr. Staring that he would take charge of the property and rent it out, and that from the rent money the taxes would be paid and the balance remaining would be applied on the debt. He testified positively as to this arrangement, and so does his mother. He names the several parties who worked the property under that agreement and produced one of them, Orange Richardson, who testified that he was on the property for the three years, 1915, 1916, and 1917, and that he paid Mr. Staring $50 the first of those years, $70 the second, and $90 the third.

It is important to note at this time that it was in the year 1914, some three years after defendant had left the property under the arrangement he testifies he had with Staring, that the property was sold for the taxes due for the previous year. It is to be noted also that at that time the property was still assessed in the name of Victor Joseph, his succession never having been opened and his heirs placed in possession of his estate. On the assessment roll, the property is described as being "Lots 3, 4, 5, 6, and Frc. W. ½ Sec. 25 T. 8 R. I E.," said to contain 84 acres. This appears to be the same description as appears in the deed by which Victor Joseph had patented the property from the United States government on June 18, 1901, although in the deed the area is said to be 81.4 acres, and not 84 acres as assessed. It appears, however, that in February, 1902, Joseph had sold to Lucy Johnson, by deed duly recorded in the conveyance records, a tract of land, being a part of the same property, and shown to contain approximately 30 acres. It is evident, therefore, that the description of the property as carried on the assessment roll was not a true and correct description of the property that remained to Victor Joseph after the sale made to Lucy Johnson.

Such was the status of the assessment and tax roll in 1914, when the time came for the sheriff and ex officio tax collector of Iberville parish to send out notices to delinquent tax-payers. The taxes on the property assessed in the name of Victor Joseph had not been paid, so he accordingly sent out the notice, addressed to Victor Joseph, a dead man, with the result that the notice was never accounted for, the taxes never paid, and, on June 20, 1914, at the sale of properties for unpaid taxes, the property was adjudicated to Emanuel Falcon for the amount of the taxes due, plus costs and penalties. Four months later, to be exact, on ·October 23, 1914, Falcon deeded the property to Joseph Staring for the consideration of $19.27, which must have been the same amount for which it had been adjudicated to him. The sale from Falcon contains a clause to the effect that ·the vendor only sells the right and claim to the tax title which he had acquired, and specifically declares that "he does not guarantee the title to said property." Unaware that the property had been sold for taxes, and relying on the agreement which he understood he had with Staring, defendant let matters remain as they were. After Staring's death, his son, Dr. Houston L. Staring, assumed charge of the property under what defendant thought was a continuation of the same agreement, when, at some time, the exact year he was unable to recall, he learned that the tenant who was occupying the property, one Joe Comeger, was cutting the timber thereon, and he at once ordered him off, and he and ·one of his brothers, Jules Joseph, took possession of the property and have remained on it ever since. Dr. Houston Staring then claimed that there was a balance still due on the· indebtedness, and even then defendant and his brother agreed to liquidate it. Defendant claims that they paid a very substantial part of the amount claimed until the time of Dr. Houston Staring's death, after which his widow refused to continue the arrangement and told them that she would sell the property. She took steps to do so, which, as already shown, led to this litigation.

We have detailed the facts as we find them disclosed by the record. A solution of the case depends almost entirely on whether these facts are sufficient to support a contract of agency between the defendant and Joseph Staring, in which capacity alone the latter could ever have been in possession of the property. If his possession was that of an agent, charged under the contract with the ·payment of the taxes, naturally the tax sale to Falcon, which undoubtedly was for his benefit, was null and void, being in violation of his trust. Of course, he acquired nothing under his deed, and his estate, at his death,

had nothing to transfer to his son and heir, Dr. Houston L. Staring, through whose estate, in turn, plaintiff claims title.

The learned district judge did not consider the case from this point of view. He held the tax sale to be defective and irregular for want of notice of delinquency and of the intention to sell the property to the real owners. He further held, however, as we have already stated, that these defects and irregularities had been cured by three years' prescription provided for in such cases, by the constitution of this state. Even then, however, it was necessary for the trial judge to take into consideration the facts tending to show agency, as he correctly stated that the prescription which he later applied was suspended so long as the tax debtor or owner of the property remained in the actual possession thereof. Bonvillain v. Richaud, 153 La. 431, 96 So. 21; Levenberg v. Shanks et al., 165 La. 419, 115 So. 641. But he dismissed the question of possession through Staring's agency by saying that the testimony "is so far fetched and incredible as to be unworthy of serious consideration." In this we find ourselves obliged to disagree with the district judge.

Up to the year 1914, when he obtained, for the first time, a deed in his own name, Staring could not have had possession of the property in any other way than as agent. Defendant left in 1911. He says that even prior to that time Mr. Staring paid the taxes from the rent money collected. After defendant left in 1911, the taxes were evidently paid until 1913, and, next to the owners of the property, it would seem, under the record as we view it, that Staring was the person the most interested in seeing them paid.

■ There is not anything fantastic or unbelievable, as far as we can see, in the testimony of the defendant and his witnesses, concerning the agreement he says he had with Mr. Staring. It appears to us to have been a very reasonable arrangement under which the property would be taken care of and the indebtedness liquidated. The veracity of these witnesses is not attacked, and they impress us as being honest. The lower court, in its opinion, comments on the circumstance that the testimony relates to transactions with a man who is now deceased, and it refers to the frequent holdings by the courts that parol evidence of statements and admissions of a party deceased is the very weakest kind of evidence. But the testimony of these witnesses is not parol evidence of statements and admissions made by Mr. Staring. It is direct proof of an agreement which they contend existed between him and the defendant. It is true that evidence against a deceased person is of a weak character, but it is legal evidence nevertheless, and should not be rejected entirely, unless shown to be wholly unreasonable and unreliable.

■■ We might add that it is our opinion that, even though it would appear that Staring did not acquire the property through the tax sale, in violation of his trust as agent, the tax sale itself was null and void, if for no other reason, at least for want of proper notice of delinquency. Beyond stating that he sent a notice of some sort, either by mail or by a deputy, to Victor Joseph, a man who had been dead eleven years, the sheriff says that he made no other effort to notify the actual owners of the property (the heirs of Victor Joseph) at the time notice was issued. There is absolutely no record of what was done save the issuing of a notice of some kind, which the sheriff traces to a mark opposite the name of Victor Joseph on the assessment roll. The case of Wilkerson v. Wyche et al., 158 La. 596, 104 So. 381, is authority to the effect that the sale of land for delinquent taxes is null and void, in a case where registered notice of delinquency is sent out by the tax collector to a dead person in whose name the recorded title still rested and to whom it was still assessed, if the registered notice is returned to the tax collector and no further effort is made by him to notify the actual owners. The district judge in this case was of the opinion that this constituted a defect in the tax sale before us, but, as we have already stated, he held that the defect had been cured by the prescription of three years. As we have also observed, he correctly stated that that prescription could be suspended during the time the owner remained in actual possession of the property, and it is in applying the facts which tend to show possession that we differ with him. Under our appreciation of the testimony, as indicated herein, the defendant remained in actual possession at all times, either personally or through the agency which he had established under the agreement with Joseph Staring.

■ In the case of Brown v. Brown, 15 La. Ann. 169, the court held that: " * * * In the petitory action, the plaintiff must himself produce title; not a mere paper title, but a title which is traced back to an author who had in himself the right of property in the thing sold."

From Glover v. Haley et al., 118 La. 649, 43 So. 265, 266, we quote the following: "The case is one in which the defendants being

in possession, in good faith, under a title translative of property, the plaintiff, in' order to recover, must establish a perfect title in himself."

These requirements as prescribed, for a person to maintain the petitory action, by these decisions as well as numerous others which might be cited, have not been met by the plaintiff in this suit, and, contrary to the holding of the trial judge, we are constrained to reject her demand.

For the foregoing reasons, it is therefore ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, reversed and set aside, and it is now ordered that there be judgment in favor of the defendant herein and against the plaintiff, rejecting her demands and dismissing her suit at her costs.