The earnestness with which counsel for appellants presented their application for rehearing prompted us to give this case further consideration. Rehearing was granted and it is now before us for final decision.
The nature of the suit as well as the various pleas involved are fully stated in the original opinion handed down and now reported. 8 So.2d 380. The facts are summarized, not only in the majority opinion, but also as they are interpreted and analyzed by him, in Judge Dore's dissenting opinion. Although the proceeding was inaugurated by the Atchafalaya Basin Levee District, as pointed out in the majority opinion, the contest has now resolved itself into a suit in which Wesley Sperling and his co-heirs, former owners of the property involved, occupy the same positions as though they were plaintiffs in a proceeding in which they are attacking a sale of that property made for unpaid taxes on November 26, 1932, against Raymond Egle, purchaser of the property from the tax-sale adjudicatee and who therefore would occupy the position of defendant in that proceeding. The parties will be referred to as standing in those respective capacities.
Some preliminary pleas which had been filed by the defendant were disposed of in the majority opinion. As to such disposition the dissenting opinion seems to agree and apparently it is now conceded by all *Page 42 
parties that they were properly decided. The sole question remaining at issue in the case, and indeed, the only one which was considered by us in granting the rehearing, is whether the prescriptive period of five years provided for under Art. 10, § 11 of the Constitution of 1921, as now amended, which has the effect of setting at rest all questions surrounding the tax sale except that of prior payment of the taxes for which the property was sold, had been suspended by reason of the occupancy of the property by either one or more of the tax-debtors.
As already stated, the tax sale took place on November 26, 1932, and as shown by the opinion already handed down, Dr. Charles DeGravelle, the adjudicatee at that sale, transferred the title he had acquired, by sale, to Raymond Egle, the defendant, on January 6, 1933. As is also pointed out in that opinion, at some time after the tax sale, Wesley Sperling had made some representations to an engineer of the Atchafalaya Basin Levee District which may have amounted to some claim of ownership of the property, but it was not until March 23, 1939, more than six years after the tax sale, and after he and his co-heirs were cited as parties to this proceeding, that any of them formally and judicially made any demand based on their alleged possession or ownership. It was what possession they had through any one or more of them, during that period, that they must rely on in order to defeat Egle's claim of ownership under the prescriptive period which had already accrued.
The kind and nature of possession required to operate as a suspension of the prescription involved, is that of a corporeal detention of the property. Levenberg v. Shanks, 165 La. 419,115 So. 641, 642. In that case it is also stated that "no other possession than actual corporeal possession is sufficient to operate as a continuing protest against the tax title, and thereby prevent the peremption from accruing." And in Tensas Delta Land Co. v. Anders, 158 La. 94, 103 So. 522, 523, it seems to be made the burden of the one claiming such possession to support it by sufficient and competent proof, for it is therein stated: "In this case defendants [who held the position of the plaintiffs in the present case] must prove that the tax debtor or his heirs were in possession of the property when the Constitution of 1898 was adopted, and that they have since remained in continuous possession thereof, to avoid the effect of the three years prescription [now five years] pleaded by plaintiff."
For the purpose of considering the prescription relied on by the defendant in this case, it may well be conceded that the Sperling heirs, through some of them, did retain and remain in such possession of the property from the date of the tax sale until he acquired it on January 6, 1933, but from this latter date until March 23, 1939, when they made their appearance in the proceeding, a period of more than six years had intervened and our careful reconsideration and studied review of the facts in the case has only served to confirm our former conviction that they have failed to adduce the proof required to show the kind of possession which the law requires to toll the prescription claimed.
The most that they have shown is that Wesley Sperling, one of the heirs, continued to occupy a house on the property and that on one occasion, Surrel Sperling, another of the heirs, returned to the property and stayed at the same house with his brother for a considerable period of time. Wesley Sperling's occupancy of the house he lived in was in the nature and capacity of an employee of Egle, who all during that time conducted a small sawmill business on the property. Neither Wesley Sperling, nor any other of the heirs, ever made any claims or pretentions of ownership of the property except the conversation Wesley Sperling had with a representative of the Atchafalaya Levee Board after that Board had appropriated a portion of it for public purposes, and what representations may have been made were never communicated to Egle. Otherwise, Wesley Sperling's action, instead of indicating or manifesting any claim of ownership of or control over the property, seemed on the contrary, to disclaim ownership, all as is also pointed out in the majority opinion heretofore handed down.
In the dissenting opinion it is stated that the most favorable situation presented as far as Egle is concerned is that "there was dual occupancy of the premises." In our opinion, Egle's occupancy and possession of the property was immaterial. It was the Sperlings' actual corporeal possession that counted, and that possession must have been one by which they exercised some claim of exclusive dominion over the property; a claim which, as stated in the *Page 43 
decisions already cited herein, amounted to a continuous protest against the tax sale from which Egle derived his title.
Counsel for appellants have cited numerous decisions, some of which we do not understand why, as in those, it was definitely held that the possession claimed to operate as a suspension of the prescription had not been proven. Tensas Delta Land Co. v. Anders et al., supra, is one of those cases and so is Marque v. Kowle, 5 La.App. 541. Lack of such proof was also shown in the case of Baldwin Lumber Co. v. Dalferes, 138 La. 507, 70 So. 493, but it seems to have been cited by counsel because of the excerpt contained in the opinion from the case of Carey v. Cagney,109 La. 77, 33 So. 89, 91 in which although the facts relating to the possession are not given, the court held that the record owner (apparently the tax debtor) was then "and had always been in the corporeal possession of the property" against a tax purchaser who "never had either the actual or constructive possession."
In Federico et al. v. Nunez et al., 173 La. 957, 139 So. 18, it was shown that the property involved in the tax sale had, a few days prior thereto, been vacated by the owners, and although it was in a somewhat dilapidated condition, was not noticeably abandoned as it had been posted by them for rent. It was subsequently rented one year after the tax sale had taken place and the owners, holding through their tenant, were decreed to have been in actual corporeal possession, without interruption, up to the date the case was tried. The facts relating to possession therefor can hardly be compared to those in the present case.
Fountain v. Kirby Lumber Corporation, La.App., 199 So. 603, 607, is a decision of this court in which we held that the action on the part of one of the heir tax debtors who had remained on the property after the tax sale, in so actively protesting against the tax title holder who had started to build a highway across the property that her protest became effective, constituted such possession as was required to interrupt the prescription relied upon.
In Hargrove v. Davis, La.App., 178 So. 198, also a decision by this court, it was shown that when the purchaser at tax sale attempted to take possession of the property by sending his agent or representative to tear down a small house and some fencing on a portion of it, the tax debtors had the agent arrested and started to have him prosecuted. The prosecution fell because it developed that that portion of the property on which the trespass occurred was situated in a Parish other than the one in which the proceeding had been initiated. Very aptly, we believe, this action on the part of the plaintiffs was stated and held to be "a very vigorous protest" against an attempt to disturb them in their possession of the property.
We have examined as many cases as we could find bearing on the point at issue and in not one has it been held that the mere occupancy of a house on the property by the tax debtor, by reason of some relation between him and the tax purchaser, or through some indulgence on the latter's part, constituted such possession as would interrupt the prescription which runs in favor of the tax title.
The lack of definite proof tending to show Egle's possession in order to establish the prescription claimed in his favor is considerably stressed, but as we have already stated, his possession or that of his vendor, the tax adjudicatee, was immaterial. In the original opinion the fact that he himself had possession from the early part of 1934 to March 23, 1939, when plaintiffs first made their appearance herein, is referred to, but that was in order to emphasize the lack of possession on the part of the Sperling heirs more than anything else. From a statement made however, it might be implied that in order for the tax purchaser or his transferee to obtain the benefit of the prescription provided for by the Constitution, he would have to go in, and retain adverse and hostile possession as against the owners for the prescriptive period involved. In support of the statement as made, we cited the case of Skannal v. Hespeth,196 La. 87, 198 So. 661, from which the same inference might be drawn. A ruling to that effect however would seem to be in direct conflict with former decisions and especially with that in the case of Bonvillain v. Richaud, 153 La. 431, 96 So. 21, 23, in which it is stated that "it is settled by a long line of decisions, and has never been denied or doubted by this court, that it is not necessary that a purchaser at a tax sale shall take actual possession of the property in order to have the benefit of the prescription of three [now five] years. On the contrary, it is when the original owner of the property remains in possession *Page 44 
that the prescription is suspended." And from Pickens v. Dellinger et al., 161 La. 694, 109 So. 391, we quote as follows: "Defendants argue that, since plaintiff was never in possession, he cannot successfully interpose the plea. The argument is not sound. Under our jurisprudence, it is only when the tax debtor is in actual corporeal possession of the property, or in cases of dual assessment or prior payment of the taxes, that the prescription will not run in favor of the holder of the tax title. It is applicable in all other cases."
As we have stated, if there is any implication arising from any statement in the original opinion regarding Egle's possession, it may well be regarded as immaterial on the point of the suspension or interruption of prescription claimed by the Sperling heirs, but we still believe that such as it was, his absolute control over the property conclusively shows how nil was the possession of Wesley Sperling which is relied on to show such suspension.
Satisfied as we are of the correctness of our original decree in this case, it is now ordered that the same be and it is hereby reinstated and made the final judgment and decree of this court.