## WASHINGTON JENKINS *v.* THE PARISH OF CADDO.

He who sells a debt or an incorporeal right, warrants its existence at the time of the transfer, though no warranty be mentioned in the deed.

Even in case of stipulation of no warranty, the seller, in case of eviction, is liable to a restitution of the price, unless the buyer was aware at the time of the sale of the danger of the eviction, and purchased at his peril and risk.

The following order is not a bill of exchange: " On demand please pay to the order of *W. J.* the sum of seven thousand dollars, according to a donation made by the Shreveport Town Company to the parish, the same to be in accordance with a resolution of the police jury, passed October 6, 1840." It commences with a direction to pay a sum certain, on demand, but it is qualified by the subsequent reference.

APPEAL from the District Court of the Parish of Caddo, *Bullard,* J. *Roysdon* and *Spofford,* for plaintiff. *Terrell* and *Hodge,* for defendant. By the court:

SLIDELL, J. This suit was brought by the plaintiff, to rescind the sale of certain lots of ground, or to recover the sum of four thousand dollars, alleged to be due him by the parish of Caddo. He represents that, on the 4th day of November, 1840, he sold to the parish of Caddo certain lots of ground; that the consideration of said sale was the sum of eight thousand dollars, seven thousand to be paid to him in a draft, to be drawn by the president of the police jury of said parish on the Shreveport Town Company, and one thousand by draft on the treasurer of the parish. He admits that the last mentioned sum has been paid. He also avers that he was induced to believe that said company was indebted to the parish in the sum of seven thousand dollars, and that he agreed to take, in part payment of the purchase price of his lots, the draft aforesaid, and to release the parish from the payment of the same. He also alleges, that the said company was never indebted to the parish of Caddo in any amount. He admits that he has received three thousand dollars upon the draft, and states that he'has credited this amount upon the seven thousand due him by the parish; and avers that he has been unsuccessful in a suit against the four members of the company, who refused to pay, upon the draft.

The defendant pleaded the general issue, and also, that the property was purchased with the understanding that plaintiff was to receive the draft in part payment of the price of the lots, without any recourse whatever on the parish. The prescription of five and ten years is also pleaded.

There was judgment for the plaintiff for four thousand dollars, with the vendor's privilege, upon the lots sold. The defendant has appealed.

The facts of this case, so far as they are disclosed by the evidence, are as follows: The police jury of the parish of Caddo were about to determine the site of a court house    The subject was one, we may reasonably presume, of much interest to owners of property in the parish, as it might probably enhance the value of lots near the place which might be chosen. There appears to have been in existence, in 1840, an association of individuals styled the Shreveport Town Company, and composed of seven members, *Angus McNeil, Bushrod*

JENKINS
*v.*
PARISH OF
CADDO.

*Jenkins, Henry M. Shreve, Sturges Sprague, Thomas F. Williamson, James B. Pickett* and the firm of *Cane* and *Bennett*.

The plaintiff and another person offered lots to the police jury. The proposition of the plaintiff was, after a good deal of discussion, considered the most advantageous; and, accordingly, on the 4th November, 1840, a notarial act was executed, in which the plaintiff sells to the parish of Caddo, represented by its police jury, three lots of ground in Shreveport and the buildings thereon, for the price of $8000, payable in the following manner, as recited in the deed: " Seven thousand dollars to be paid in a draft, drawn by the president of the police jury, and signed by him as their authorized agent, the draft to be drawn on the Shreveport Company, and to be received at par value without any subsequent recourse to law or equity upon said parish or its acting agents. Also, a draft for a thousand dollars, to be drawn and executed by said *Thomas Craighead Porter*, as agent of the police jury, duly authorized to draw on the treasurer of said parish, *Daniel W. Edgerley*, for the abovementioned amount." The deed recites, that it is executed by the president of the police jury, under the authority of a special resolution of the police jury, dated 6th October. We find no copy of it in the transcript, and are left in ignorance of its contents, except so far as they may be inferred from the action of the president. The draft on the treasurer has been paid. The draft on the Shreveport Company is in the following form:

" $7000. Shreveport, November 4, 1840. On demand please pay to the order of *Washington Jenkins* the sum of seven thousand dollars, according to a donation made by the Shreveport Town Company to the parish, the same to be in accordance with a resolution of the police jury, passed October 6, 1840.

" THO's. C. PORTER, President of Police Jury.

" *Mr. Bushrod Jenkins*, parish of Caddo, Treasurer of Shreveport Town Company."

Upon this draft the plaintiff admits, in his petition, that he has received $3000 from *Bushrod Jenkins, James H. Cane* and *Thomas F. Williamson*, three of the members of the company. But the draft also exhibits an acceptance, of the following tenor: " I accept, for one thousand dollars, to be paid out of the notes in the hands of *B. Jenkins*, treasurer of the Shreveport Company. *W. W. George*, curator of succession of *S. Sprague*." The draft exhibits acceptances, in a similar form, by *Williamson* and *Cane*, for $1000 each, and an absolute acceptance for the amount by *B. Jenkins*.

It is admitted that the lots, described in the act of sale, have always been used for parochial purchases since the sale. The court house was established upon it.

*Angus McNeil* was examined as a witness, by the plaintiff, under commission. His testimony is loosely taken. The substance of it is, that he was well acquainted with the affairs of the Shreveport Company, but that he removed from the parish in June or July, 1840, up to which time he acted as its president. He says his impression was, that, as president, he offered the police jury seven thousand dollars if they would locate the county seat at Shreveport, but they never did so locate it as long as he remained at Shreveport. He declares that he is satisfied that the Shreveport Company never owed the parish anything; but in answer to the interrogatory put by the defendant, " What induced the company to agree to pay each one thousand dollars ?" he says, " The inducement was to have the county seat located at Shreveport."

There is an admission in the statement of evidence, that *Bushrod Jenkins*, *Cane*, and *Williamson*, each voluntarily paid $1000 on the draft, but that the others denied their indebtedness, and have paid nothing. That the plaintiff brought two suits against those members for their proportion, which terminated in favor of those defendants. One of those suits was against *Pickett's* heirs; and a witness, who was attorney for the plaintiff in that suit, testifies that he got all the testimony he could in that suit, and used unusual diligence in its prosecution, but lost it on the merits.

Upon what ground, particularly, the suits were defeated, does not appear.

The draft for $7000 was given in part payment of the price of the purchase. Under the facts, so far as they have been disclosed, it was, in legal contemplation, the transfer of a debt for a valuable consideration, to wit, the land conveyed to the transferror by the transferree. The general rule is, that he who sells a debt or an incorporeal right, warrants its existence at the time of the transfer, though no warranty be mentioned in the deed. Civil Code, art. 2616. The principle recognized by this article is well stated by Domat. " As in the sales of movables and immovables, natural warranty obliges the seller to deliver and warrant a thing which is in being; so likewise in the sales or conveyances of rights, such as a debt, an action, an inheritance; natural warranty obliges the transferror to transfer a right which subsists, a debt which is due, an inheritance which has fallen, an action which may be prosecuted; and if the transferror had not the right which he sells and transfers, the sale would be null, and he would be bound to restore the price and make good the damages of the buyer or transferree." See also *Toler* v. *Swayze*, 2 Ann. 880.

But although such is the general rule of law, there is no doubt the contracting parties may make a law for themselves, and diminish or restrain, by their convention, the responsibility which, in their silence, the law would attach to their agreement. And this leads us to consider whether, in the present case, the parties have so agreed, as to take the case out of the general rule.

It is said they have done so by the clause in the deed which declares, that the draft was " received at par value without any subsequent recourse to law or equity upon said parish or its acting agents." But we are of opinion that this clause has not such an effect. The claim was not transferred as a mere chance; there is nothing to show that the transferree was informed, at the time, of an uncertainty of the existence of the claim, and purchased it at his own risk and peril. Under such circumstances the stipulation must be construed, as dispensing the transferror from responsibility for the solvency of the Shreveport Company, but not from the implied warranty of the existence of the debt. The principle which controls this question is found in that article of our code, which, in treating of the contract of sales, declares that even in case of stipulation of no warranty, the seller, in case of eviction, is liable to a restitution of the price, unless the buyer was aware, at the time of the sale, of the danger of the eviction, and purchased at his peril and risk. Civil Code, art. 2481 See also Pothier *vente* No. 186. Troplong *vente* 936 *et seq.*

Before leaving this branch of the subject, it is proper to observe that we do not look upon the draft as a bill of exchange, a contract which would, under the commercial law, be controlled by different rules. It is not so on its face. It is true, it commences with an order to the drawee to pay a sum certain, on demand, but it is qualified by the subsequent reference to a donation, and a resolution, in accordance with which the payment is to be made, and the nature of which is

unexplained by the instrument, and undisclosed by the evidence. The stipulations in the deed also show that it was not intended the drawer should assume the attitude of an ordinary drawer of a bill.

We come now to the inquiry, whether there was, at the time of the sale, no existing liability by the Shreveport Town Company, or its members, to the parish of Caddo.

Upon this point we have no hesitation in saying, that the judgment of the district court is, in part, manifestly erroneous; and, as to the residue of the case, it is presented in such a manner, by the evidence, as to leave our minds in doubt as to the true merits of the controversy.

We have seen that this company, which was incorporated, consisted of seven members. The plaintiff took acceptances from four of those members for their proportion of $1000 each. Those who thus accepted have paid. One of them has not paid; but by taking his acceptances, the nature of which is above mentioned, the plaintiff clearly took him as his debtor *pro tanto*, and extinguished any claim he might have for recourse *pro tanto* upon the defendant. It is inadmissible for the plaintiff now to say, that as to this amount, the claim transferred had no existence, and that the implied warranty has been falsified.

With regard to the liability of the other members of the company who have not paid, so much of the nature of the transaction is left undisclosed, that we are unable to speak with certainty as to the rights of the parties. The resolution of the police jury of 6th October is not before us, nor is the donation made by the Shreveport Town Company to the parish, which is spoken of in the draft. Nor are we informed of the precise grounds upon which the suit against *Pickett's* heirs was lost. On the other hand, although ten years, save a fraction of a single day, had elapsed from the time when the plaintiff received the draft to the institution of this suit, no attempt whatever was made in this long interval to recur to the defendant. The staleness of the demand casts a shade over the plaintiff's pretensions, which justifies a court of justice in requiring a more satisfactory showing than has been made in this case, to hold the defendant liable for this large amount.

Judgment reversed and the cause remanded; costs of appeal to be paid by the plaintiff.