181 So. 458

**TOMLINSON v. THURMON et al.**

No. 34772.

May 2, 1938.

Truett L. Scarborough, of Ruston, for plaintiff.

Elder & Elder, of Ruston, for defendants.

LAND, Justice.

On July 3, 1934, James Jones, of Lincoln parish, La., the then owner of the land, executed an oil, gas, and mineral lease to the defendant John W. Thurmon, covering E. ½ of S. E. ¼ of Sec. 27, T. 18, N., R. 4 W., containing 80 acres, more or less, for a term of five years; it being the usual form of a commercial lease contract. On

the same day, Jones sold to the defendant Mrs. Edith Thurmon, née Cann, wife of John W. Thurmon, of Ruston, La., for the price of $120 cash, one-half of all the oil royalties and gas rentals or royalties due and to become due under the terms of the lease, and a like interest in all money rentals that may be hereafter paid in order to keep said lease in effect without drilling.

On October 14, 1935, the defendants, John W. Thurmon, Mrs. Edith Cann Thurmon, and L. D. Bartell of Longview, Tex.; sold to plaintiff, for the cash price of $600, "all rights, title, and interest in and to that certain oil, gas, and mineral lease executed by James Jones to John W. Thurmon, *in so far only as it covered the N. E. ¼ of S. E. ¼ of Section 27, T. 18, N. R. 4 West, containing 40 acres, more or less.*" The plaintiff, J. Clyde Tomlinson, the assignee, agreed "to faithfully carry out all of the provisions of the original lease *in so far as it applies to that portion of the tract conveyed herein.*"

But there was no obligation on part of the assignee with respect to keeping the lease in force on the land not conveyed, and the defendants, the assignors, retained no overriding royalty to be paid by the assignee in addition to the royalty to be paid the original lessor, James Jones.

This transfer whereby defendants, the holders of the oil lease, disposed absolutely of their interest in the lease on part of the land, without retaining an overriding royalty, constituted an assignment, and not a sublease. Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264.

On January 3, 1931, James Jones, being indebted to the Bank of Simsboro, executed a mortgage on certain of his lands, including that covered by said oil, gas, and mineral lease, payable to himself, and pledged same to the Bank of Simsboro to secure his indebtedness. The Bank of Simsboro transferred this indebtedness to First National Bank of Ruston. On February 20, 1936, that bank instituted proceedings to foreclose, and, in due course, the lands covered by the mortgage, including that covered by plaintiff's lease, were sold by the sheriff of Lincoln parish to First National Bank in satisfaction of the indebtedness.

The sale was made *without any reservations* as to the oil, gas, and mineral lease in question.

Plaintiff alleges that, by reason of the mortgage attached to the land prior to the execution of his lease, and of the sale of the land covered by the lease, in the foreclosure proceeding of the mortgage, he was evicted, and lost all the rights and benefits conveyed to him by the sale of the lease.

Plaintiff alleges that, under the law, when the defendants sold him the lease, they warranted same to be free of all encumbrances and guaranteed the title to same, and that he has made demand upon them to return to him the price paid them for the sale, without avail.

Accordingly, plaintiff prays for judgment in his favor and against the defendants, John W. Thurmon, Mrs. Edith Cann Thurmon, and L. D. Bartell, in solido, for the amount of $600, with 5 per cent. per annum

interest thereon from May 20, 1936, until paid, and all costs of suit.

L. D. Bartell, one of the parties to the sale of the lease, being a nonresident of the state, was never served with a copy of the plaintiff's petition, and is therefore not a party to this suit.

Judgment was rendered in the Third judicial district court, parish of Lincoln, in favor of plaintiff and against the defendant John W. Thurmon, for the sum of $200, with 5 per cent. per annum interest thereon from May 20, 1936, until paid, and against Mrs. Edith Cann Thurmon for the sum of $200, with 5 per cent. per annum interest thereon from May 20, 1936, until paid, and defendants were cast for all costs of suit. This judgment also reserves the rights of plaintiff against L. D. Bartell, the defendant who was not cited.

On appeal by defendants to Court of Appeal, Second Circuit, the judgment of the lower court was reversed and plaintiff's demands were rejected at his cost. This judgment is now before us for review.

■ (1) The defense set up by defendants is that the instrument under which plaintiff acquired the lease was an assignment and was not subject to the laws of warranty.

The contention that the assignment was not subject to the laws of warranty is without merit. Article 2449 of the Civil Code provides that: "Not only corporeal objects, such as movables and immovables, live stock and produce, may be sold, *but also incorporeal things,* such as a debt, an inheritance, the rights, titles and interests

to an inheritance or to any parts thereof, a servitude or any other rights." As amended by Act No. 126 of 1888, p. 186.

The sale of a mineral lease is manifestly the sale of an incorporeal thing or right.

It is true that the sale of the lease by defendants to plaintiff does not contain an express clause as to warranty. However, it is provided in article 2501 of the Civil Code that: "Although at the time of the sale no stipulations have been made respecting the warranty, the seller is obliged, of course, to warrant the buyer against the eviction suffered by him from the totality or part of the thing sold, *and against the charges claimed on such thing, which were not declared at the time of the sale."*

█ Plaintiff claims that he has been evicted of the lease which he purchased from defendants and has lost it by reason of a prior existing mortgage against the land covered by the lease.

"Eviction is the loss suffered by the buyer of the totality of the thing sold, or a part thereof, occasioned by the right or claims of a third person." Civ.Code, art. 2500.

The record clearly shows that plaintiff has been evicted of his lease.

(2) The act of sale itself makes no reference to the existence of any encumbrances whatever against the land covered by the lease.

The trial judge found as a fact that plaintiff did not know that there were any mortgages against the property, and that the defendant John W. Thurmon did not tell him at the time of the sale that any bank had a mortgage against it.

This finding of facts is supported, in our opinion, by the evidence in the case, which is fully reviewed in the opinion of the trial judge.

In Lockwood Oil Company v. Atkins, 158 La. 610, 104 So. 386, the pertinent part of the opinion is as follows (page 388):

"The second part of plaintiff's demand is founded on a separate agreement by which the defendant obligated himself, in the event there should be any defects in his title, to take steps to correct the said defects so as to insure a valid title.

"We do not regard this agreement as adding anything to the rights which the plaintiff had *under the legal and implied warranty in the original assignment of the leases.* Neither under this special agreement *nor under the legal warranty* is the plaintiff entitled to recover for profits which it would have been able to make on account of the increased value of the leases." (Italics ours.)

█ In the Lockwood Oil Co. Case, supra, this court held beyond question that the assignor of an oil, gas, and mineral lease is liable to the assignee for the restoration of the price of the lease, when the assignee has lost his lease through defects of title to the land covered by the lease.

█ It is immaterial that the act of sale of the lease by defendants to plaintiff does not contain an express warranty clause, as warranty against eviction is implied under article 2501 of the Civil Code.

Under this article, the warranty of the seller not only extends to eviction through defects in title, but also to eviction *"against the charges* claimed on such thing, *which were not declared at the time of the sale,"* which, of course, means eviction by the foreclosure by a third person of a pre-existing mortgage on the property, which was not declared, at the time of the sale, by the seller to the buyer.

It is clear that plaintiff, having been so evicted in this case, is entitled to recover under article 2501 of the Civil Code the purchase price of $600 paid for the lease, with legal interest.

The doctrine of implied warranty in the assignment of a mineral lease, an incorporeal right, announced in the Lockwood Oil Company Case, has been fully discussed and approved by this court in the more recent case of Lemoine v. City of Shreveport, 184 La. 221, 165 So. 873.

It is stated in the syllabi of the Lemoine Case:

"6. City's indorsement 'without recourse' of paving notes and certificates secured by statutory lien on abutting property held to constitute stipulation of no warranty, as regards city's liability to indorsee (Act No. 64 of 1904 §§ 38, 65; Act No. 168 of 1926; Civ.Code arts. 2475, 2503, 2505, 2645, 2646).

"7. Statute declaring that notwithstanding stipulation of no warranty, seller is liable to restitution of price on eviction, unless buyer knew of danger thereof, held applicable not only to sale of corporeal things, but also to debts or incorporeal rights (Civ.Code, art. 2505).

"8. Where indorsee of paving certificates and notes indorsed by city without recourse *lost his security due to foreclosure of pre-existing mortgage,* city *held* liable to indorsee only for price paid for instruments, with interest and costs, and was not liable for attorney's fees stipulated therein (Act No. 64 of 1904, §§ 38, 65; Act No. 168 of 1926; Civil Code, Arts. 2475, 2503, 2505, 2645, 2646)." (Italics ours.)

In the body of the opinion in the Lemoine Case, it is said by this court at pages 227 and 228, 165 So. at page 875: "Article 2475 of the Civil Code declares that the seller is bound to two principal obligations, that of delivering and that of warranting the thing which he sells. Article 2645 provides that the sale or transfer of a credit includes everything which is accessory to the same; as suretyship privileges, and mortgages. And article 2646 provides that the seller of a credit or incorporeal right warrants its existence at the time of the transfers though no warranty be mentioned in the deed. But the transfer of the notes and paving certificates by the city of Shreveport to plaintiff was not made with full warranty or without mention of warranty. On the contrary, the city of Shreveport expressly stipulated that the transfer was made without recourse, which means that it was made with the express stipulation of no warranty. Hence, the liability of the city of Shreveport is governed by article 2503 of the Civil Code, providing that the parties may agree to diminish the effect of warranty or that the seller shall not be subject to any warranty; and article 2505 which declares that even in case of the stipulation of no warranty, the seller,

in case of eviction, is liable to restitution of the price, unless the buyer was aware, at the time of the sale of the danger of eviction, and purchased at his peril and risk. *Article 2505 applies not only to the sale of corporeal things, but also to the sale of debts, or incorporeal rights.* Corcoran v. Riddell, 7 La.Ann. 268; Jenkins v. Parish of Caddo, 7 La.Ann. 559."

In Corcoran v. Riddell, 7 La.Ann. 268, Mr. Justice Slidell, as the organ of the court, said: "If we were permitted to interpret the language of the contract by the mere standard of common parlance, considered in connection with the lowness of price, we might perhaps say, that any warranty whatever was excluded. But the code is very stringent on this point, and has expressly provided that, even in case of stipulation of no warranty, the seller, in case of eviction, is liable to a restitution of the price, unless the buyer was aware, at the time of the sale, of the danger of the eviction, and purchased at his peril and risk. [Article 2505]. *This principle of the contract of sale, applies not only to sale of corporeal things, but also to the sale of a debt.* See Civil Code 2616 [article 2646 of present Code]. Troplong No. 935, 936, 937. Merlin verbo Garantie des creauces. Toler v. Swayze, 2 La.Ann. [880] 881," and Jenkins v. Parish of Caddo, 7 La.Ann. 559.

The case of Corcoran v. Riddell, 7 La. Ann. 268, was decided May, 1852, and is affirmed by Jenkins v. Parish of Caddo, 7 La.Ann. 559, decided October, 1852.

This court adheres to and expressly affirms the doctrine of warranty against eviction in the sale of incorporeal rights as announced in the Lemoine Case.

(3) The contention of the Court of Appeal is that, under article 2646 of the Civil Code, *the seller merely warrants the existence of the incorporeal right at the time of the sale.* This article of the Code, taken alone, is not the law as laid down by the Revised Civil Code, nor as interpreted by this court in the cases herein cited. Such contention leaves entirely out of consideration article 2505 of the Civil Code, and article 2501 of the Civil Code, which declares that: "Although at the time of the sale no stipulations have been made respecting the warranty, the seller is obliged, of course, to warrant the buyer against the eviction suffered by him from the totality or part of the thing sold, and against the charges claimed on such thing, which were not declared at the time of the sale."

The plaintiff, as the buyer of the lease, has been evicted of the possession of the totality of the leased premises, by "the charges claimed" on the land leased, through the foreclosure of a pre-existing mortgage, which was not declared by the seller to the vendee at the time of the sale.

To hold, under article 2501 of the Civil Code, *that the seller merely warrants the existence of the lease at the time of the sale,* would permit the seller to retain the purchase price, however large, notwithstanding the subsequent eviction of the buyer through the foreclosure of a pre-existing mortgage on the land leased and not disclosed to the seller at the time of the sale. Such a transaction would necessarily be an act of palpable bad faith upon

the part of the seller, if not an intentional fraud perpetrated by the seller upon the buyer.

■■■ (4) While discussing this question of the warranty in the transfer of a mineral lease, an incorporeal right, it must also be considered that a lessee in a mineral lease is given the same rights as a lessee in an ordinary predial lease.

Article 2696 of the Civil Code specifically provides that: "If the lessee be evicted, the lessor is answerable for the damage and loss which he sustained by the interruption of the lease." Gulf Refining Co. of Louisiana v. Glassell, 186 La. 190, 171 So. 846.

■■ Our conclusion therefore is, that if the assignee of a mineral lease is evicted, he is fully protected under articles 2501 and 2505 of the Civil Code, and by the decisions of this court in the matter of warranty in sales or assignments of incorporeal rights.

■■ And if the lessee in a mineral lease is evicted, he is fully protected under article 2696 of the Civil Code, under the head "Of Letting Out Things," as held in the Glassell Case.

For the reasons assigned, the judgment of the Court of Appeal, Second Circuit, under review herein, is annulled.

It is now ordered that the judgment of the Third judicial district court for the parish of Lincoln be affirmed, and that defendants John W. Thurmon and Mrs. Edith Cann Thurmon pay the cost of this proceeding, and all other costs of this suit.