Plaintiff sues to recover the price of two notarial acts of sale of minerals unto him by the defendant, with legal interest thereon from May 6, 1933, and for the fee of the attorney employed to file and prosecute this suit. Each of said acts of sale carried unrestricted covenant of warranty. The prices equal $1,200. Plaintiff was evicted from the property described in said instruments by and through the foreclosure of a conventional mortgage thereon executed by H.L. Thomason, defendant's grantor, and others, antecedent in registry to the transfers to plaintiff.
Defendant's answer is quite lengthy. He denies that by the instruments sued on he sold to plaintiff, or that plaintiff thereby purchased from him, as vendor, the minerals and mineral rights therein described. Tersely stated, the suit, as reflected from the answer, is resisted primarily on the ground that defendant was not in reality the owner of the property ostensibly sold by him to plaintiff, but that the same was in truth and *Page 478 
fact owned by said H.L. Thomason, the fee owner, who, for convenience and to protect himself against the pursuit of his creditors, simulatedly transferred the property to defendant who thereafter held it as nominal owner or party interposed; and that plaintiff well knew the true facts of the matter, negotiated the sales to him with Thomason personally and his attorney, C.J. Ellis, Jr., and knew that the prices paid by him did not inure to defendant's benefit but were in fact received by Thomason.
The answer elaborately sets forth detail of facts to support the defense. With the aforementioned position as a premise, defendant theorizes that the covenant of warranty in the transfers sued on were never in effect as to him and that plaintiff may not avail himself thereof as a means to recoup the loss sustained by him because of the eviction.
Further, defendant takes the position and alleges that in view of plaintiff's personal knowledge of the true facts existing prior to and attending the confection of the two transfers to plaintiff, and of the true status of the title of the property he acquired from defendant, as party interposed, the effort now being made by him to hold defendant liable as warrantor "is founded in bad faith and if enforced would constitute a fraud against your respondent."
In the alternative, defendant pleads that should plaintiff prevail to any extent herein, credit should be given on the judgment in his favor for the amount of royalties received by him under the transfers in question, the total of which, it is alleged, is $685.58.
Judge C.J. Ellis, judge of the Fifth District Court, recused himself for cause and appointed Judge D.I. Garrett of the Fourth Judicial District Court to try the case. On June 28, 1938, the case was partly tried but was held open for an indefinite date in order to procure the testimony of Judge Ellis. By agreement of counsel, the case was again taken up for trial on April 29, 1940, at which time counsel for defendant expected Judge Ellis to be present and testify although he had not been summoned. Judge Ellis did not appear when trial was resumed and this forced plaintiff to move for a continuance because of the judge's absence. The motion was overruled and the case closed. Judgment was rendered for plaintiff for the full amount sued for, excepting the attorney's fee. Both parties appealed to this court.
The motion for a continuance, it is conceded, was properly overruled if the ruling of the trial judge that parol testimony is inadmissible under the pleadings to establish the facts set up in defense is correct.
It appears that in the negotiations culminating in the sales to plaintiff and also in that to Mr. Chennault (involved in suit No. 6358), Judge Ellis, then a practicing attorney at Rayville, Louisiana, represented all the parties. As there was then no conflict of interest between any of these parties it was perfectly ethical for him to so act. The knowledge acquired by Judge Ellis while so acting, defendant contends, is material to the defense and should be divulged on the witness stand.
We agree with the trial judge's ruling that under the pleadings parol testimony is incompetent and inadmissible to change, modify or alter the contents of the authentic acts of sale to plaintiff. This being true, Judge Ellis' testimony would not be admissible. Therefore, the continuance was properly denied.
The cardinal rule of law which inhibits the introduction of parol testimony to contradict, alter or vary the contents of written instruments is embodied in Article 2276 of the Civil Code. It reads: "Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since."
If defendant's contention be sound, then without any allegation of fraud or error, the authentic acts of sale to plaintiff may be so emasculated by parol testimony as to materially modify their primal import. A different vendor would in reality be substituted, the covenants of warranty would be rendered entirely impotent, and the price would be traced to Thomason instead of to defendant. The law does not permit such to be done.
The solemnity attached to and the integrity of written instruments, it was intended, should not be impaired by parol evidence save in exceptional cases and under appropriate allegations, and then only when the testimony in support thereof is clear and convincing. If this were not true it is easily seen that the probative worth of such instruments would ofttimes *Page 479 
be reduced to nearly nothing and in many cases totally destroyed. Human recollection is uncertain and generally non-dependable. For this, among other good reasons, the law uniformly encourages, and in many cases requires, that contracts be reduced to writing.
In the present case we are dealing with the sale of a real right in authentic form. Such an instrument perforce must be in writing. Civil Code, Article 2440. And, when in authentic form, constitutes a most binding obligation between the parties thereto, their heirs or assigns. Article 2236 of the Civil Code is conclusive on the subject. It reads as follows: "The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery."
Touching the sacramental character of the discussed rule of law, the court in Cary v. Richardson, 35 La.Ann. 505, 509, said: "The rule is consecrated by law and jurisprudence that, as between the parties to a written act, the only admissible evidence to prove simulation is a counter letter, which is proof of equal dignity. R.C.C. 2238, 2239. The unbending jurisprudence of this Court does not, accordingly, allow a party to vary or destroy his own voluntary declarations, or written agreements, by anything short of written evidence. The rule applies not only to agreements relating to immovables, but also to such as concern movables."
This judicial pronouncement was affirmed and repeated in Hemler v. Adcock, 166 La. 704-708, 117 So. 781.
In Locascio v. First State Bank Trust Company of Hammond,168 La. 723, 123 So. 304, 305, it is said: "It is the unbroken rule that authentic sales cannot be attacked, except by means of a counter letter, or by interrogatories on facts and articles, or by allegation and proof of fraud or error."
It is now well settled by the jurisprudence of this state that a sale of minerals and mineral rights is a sale of a real right or a servitude in the land. Vincent et al. v. Bullock et al.,192 La. 1, 187 So. 35; Gulf Refining Company of Louisiana v. Glassell et al., 186 La. 190, 171 So. 846; Frost-Johnson Lumber Company v. Salling's Heirs et al., 150 La. 756, 91 So. 207; Hanby v. Texas Company, 140 La. 189, 72 So. 933.
In the Hanby case, as reflected from the syllabus, it was held that a conveyance of an interest in oil and gas and other minerals supposed or hoped to be under the surface of a named tract of land "falls within the category of immovables, and the title thereto cannot be destroyed, and a new title created in its stead, by parol evidence, on the ground that it was acquired by an agent, in his own name, instead of the name of his principal."
In Tomlinson v. Thurmon et al., 189 La. 959, 181 So. 458, it was again held that the sale of a mineral lease (or right) was the sale of an incorporeal thing or right, and that in the event of eviction therefrom, the grantee, under express or implied warranty of title, had recourse upon his grantor for a return of the purchase price with legal interest. Articles 2501 and 2505 of the Civil Code are cited to support this ruling. In that case the purchaser of mineral rights was evicted, as is true in the case at bar, through the foreclosure of a mortgage on the land registered long prior to the mineral sale. The Tomlinson case is supported by the following cases: Crowell Spencer Lumber Company, Ltd., et al. v. Hawkins, 189 La. 18-30, 179 So. 21; Satcher et al. v. Radesich et al., 153 La. 468, 96 So. 35; Levenberg v. Shanks et al., 165 La. 419, 115 So. 641.
Defendant argues that the excluded parol testimony is admissible under the above quoted allegation that defendant's effort to hold him as warrantor "is founded in bad faith and if enforced would constitute a fraud against" him. This position is untenable. No fraud is alleged as a contributing factor to the confection of the sale. So far as disclosed by the record these sales were consummated in absolute good faith without any misrepresentation or suppression of the facts. The Civil Code, Article 1847, under the title "Of the Nullity Resulting from Fraud" lays down certain rules pertinent to contracts involving that element. Inter alia, it says:
"Fraud, as applied to contracts, is the cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantages to the one party, or to cause an inconvenience or loss to the other.
* * * * *
"It must be caused or continued by artifice, by which is meant either an assertion of what is false, or a suppression of what *Page 480 
is true, * * *", as regards a material part of the contract.
None of these essential elements are alleged in the petition.
The quoted allegation is merely descriptive of the plaintiff's attitude in prosecuting this suit in the opinion of the pleader. It simply means that if plaintiff persists in his efforts to mulct defendant, he will be in bad faith and will have committed a fraud against him by so doing.
Plaintiff received royalty payments under the sales from defendant in the sum of $685.58. Defendant strenuously contends that credit for this amount should be given him in the event he is cast. In support of this position his assiduous counsel in brief forcefully argue:
"Under Article 2501 of the Civil Code, which plaintiffs are invoking, the warranty upon which they are relying is against eviction `suffered by him from the totality or part of the thing sold.' Here admittedly the mineral rights which plaintiff purchased were in existence at the time of these assignments, and here admittedly plaintiffs went into possession of these minerals and held possession for several years during which time they received from these minerals royalties amounting, in the case of Mr. Hatch, to Six Hundred Eighty-five and 58/100 ($685.58) Dollars and, in the case of Mr. Chennault, to Five Hundred Forty-Seven and 57/100 ($547.57) Dollars (Tr. p. 93). In other words, of the minerals which these plaintiffs purchased each one actually received a part — that part being the amounts of the royalties which they admittedly thus collected.
"Bear in mind that the royalties which plaintiffs have thus collected were not rents and revenues but were actually the proceeds of the property which was the subject of these mineral sales, and constituted the reduction by the plaintiffs to possession of a portion of the rights which they had thus acquired. So they have not been evicted of all the rights which they acquired, but only of the part which was not reduced to possession through the medium of these royalty payments. And certainly they cannot be permitted to hold this defendant in warranty for that part of the rights from which they have already benefited."
Our research has not revealed a single adjudication wherein this question was presented or discussed. Defendant cites none. He relies upon Article 2514 of the Civil Code, which is as follows: "If in case of eviction from a part of the thing, the sale is not canceled, the value of the part from which he is evicted, is to be reimbursed to the buyer according to its estimation, proportionably to the total price of sale."
We do not agree with the position of counsel. We think the eviction embraced the entirety of the res covered by the acts of sale to plaintiff. The sale of minerals and mineral rights, it has uniformly been held, is simply the sale of the right to go upon the land and explore for minerals and to reduce them to possession if and when found. Thereby a servitude is established on the land for the term and purposes of the sale and/or the lease. The servitude, none the less, remains intact as a whole, although profitable production thereunder be had for years.
In the present case a mineral lease on the lands had been given by Thomason long prior to the sales to plaintiff. The transfers to plaintiff presently vested him with a fixed interest in the royalty (1/8 of production) only. It is now beyond dispute that the royalty under such a contract is in reality rent, and that the payment thereof is secured by lien and privilege upon all property placed on the leased premises in the same manner as if the lease was of a predial estate. Tyson et al. v. Surf Oil Company et al., 195 La. 248-266, 196 So. 336; Roberson et al. v. Pioneer Gas Company, 173 La. 313, 137 So. 46, 82 A.L.R. 1264; United Gas Public Service Company v. Barrett et al., La.App., 179 So. 506, and cases therein cited.
It is said in the Tyson case [195 La. 248, 196 So. 342]: "This court has also firmly established the rule that mineral leases would be construed as leases and the codal provisions applicable to ordinary leases would be applied thereto insofar as they may be; `Until the Legislature shall have passed laws specially applicable to the industry of mining, which is a new one in this state, the parties engaged in those pursuits and the courts of the state will adhere to the jurisprudence on the subject, and treat mineral contracts as leases.'"
The foregoing being true, to require plaintiff to account to defendant for the royalty payments received by him would be the equivalent of forcing him to pay to his grantor rents derived from the res, future receipt of which he has been *Page 481 
deprived through the failure of the title which defendant expressly warranted. This would not be in keeping with equity and it is not the law of this state. If the res had been a house and lot from which the grantee was evicted, would the grantor be entitled to claim as set-off as against the purchase price the rentals received on the house and lot over a period of years? Surely not.
It is argued that it would be inequitable to require defendant to restore to plaintiff the prices of the sales, and yet allow him to retain that which the res yielded to him. At first glance this contention appears sound and logical, but mature consideration effaces that impression.
Plaintiff made an investment. Presumably, he believed he was acquiring a good title to the property purchased. It did for awhile prove to be a very profitable investment and would have continued as such but for the failure of the title he received, for which he is in no wise responsible.
In cases of this character, restoration of the status quo ante does not always meet legal requirements. Such a solution would in reality be a rescission of the contract whereby all parties would be restored to their former status. This is not a case wherein, if plaintiff succeeds, he will be enriched at the expense of his vendor. If such were true here, it would be equally true in every sale of real estate or of a real right wherein the title proved bad and the covenant of warranty was sued upon, in which the vendee had realized profits from the fruit of the land or right over a period of years.
The weight of authority supports the rule that if the property, the object of the eviction, is revenue producing, rents and profits therefrom operate as a set-off to interest on the purchase price to the date of eviction. The one, it is presumed, is equal to the other. Beyond this, the rule does not extend. This rule, however, is not applicable when the evicted vendee is condemned to pay rents to the true owner. 14 Am.Jurisprudence, 584.
In the present case plaintiff sued for and was awarded interest from May 6, 1933, the date of the eviction.
The demand for attorney's fee is not pressed in this court. It is without merit. Such a fee is not recoverable in an action to enforce a covenant of warranty in a sale of real estate unless previously agreed to by the obligor. Melancom's Heirs v. Robichaud's Heirs, 19 La. 357; Heirs of Sarpy v. City of New Orleans, 14 La.Ann. 311; Walsh et al. v. Harang Husband, 48 La.Ann. 984-992, 20 So. 202; Abney v. Levy, 13 La.App. 171, 125 So. 76.
For the reasons herein assigned, the judgment appealed from is affirmed with costs.