REID, Judge.
This is a suit filed by plaintiff under the provisions of the “Uniform Declaratory Judgment Act of Louisiana”, for the purpose of declaring a certain alleged oil, gas and mineral sub-lease by Albert J. McDonald as sub-lessor to Robert W. O’Meara as sub-lessee dated June 26, 1956, covering the hereinafter described property can-celled, terminated, forfeited and of no further force and effect, and that the defendant Robert W. O’Meara no longer holds or enjoys any rights whatever under said contract, which contract conveys certain leases obtained by the plaintiff from heirs and assigns of one Henry S. Thibodeaux, and covers the following described property:
“Claim of Henry S. Thibodaux per R & R Report #617 confirmed by the United States, at New Orleans, Louisiana, January 1844, being Section 3, Township 24, South, Range 20 East, containing 211.52 acres, and Lot 1 of Section 15, Township 24, South Range 21, East, La.Mer., containing 51.50 acres, together with other lands covered by R & R Report No. 617, Volume 3, page 263 of American State Papers.
“There is excluded from this lease any of such lands now submerged beneath waters of Timbalier Bay, but the lease is applicable to any and all accretions of which the Lessor may be entitled by reason of ownership of the above described property.”
Plaintiff reserved his rights to sue for damages and expenses sustained as a result of the alleged violations of the sub-lease and alternately prayed for a judgment “can-celling, terminating, forfeiting the aforesaid sublease of June 26, 1956” and reserving the right of plaintiff to sue for damages and expenses.
The various leases covered by this contract are set out in Paragraph 22 of plaintiff’s petition and cover various prospective oil property in the Timbalier Bay Section.
The plaintiff bases his action for cancellation of this contract on the allegation that the defendant did not protect the property involved in the seven alleged leases and did not fulfill his contract in perfecting certain titles to lands contained or intended to be contained in the seven contracts pleaded in Paragraph 22 of plaintiff’s petition.
Defendant filed exceptions of prematurity based on plaintiff’s failure to comply with certain contractual obligations as plaintiff’s [sic] agent in securing mineral leases from all of the fee owners as a conditional precedent to the institution of legal proceedings for assertion and protection of title; and (2)vagueness.
Defendant further filed an exception of No Cause or Right of Action based on the following four grounds or reasons, to-wit:
(1) that the obligations claimed by plaintiff requiring defendant to perfect title are not owed to plaintiff; that plaintiff is in realty and in law the agent of defendant;
(2) that plaintiff cannot demand the legally impossible from defendant, demanding him to file law suits personally reserved by plaintiff without 'right of substitution;
(3) that plaintiff is without right until the leasing program is completed;
(4) that plaintiff has not performed nor tendered performance of his obligations to defendant.
Defendant further filed an answer and a reconventional demand which admits all of the allegations concerning the acquisition by plaintiff of the seven contracts referred *284 to in Paragraph 22 of his petition “except to show that all the leases referred to in said articles were acquired by plaintiff as defendant’s agent and-that these leases, and the obligations thereof, are the property and obligations of defendant.”
Defendant further denied all of the allegations of Articles 19 through 23 of plaintiff’s petition and pleads that defendant is not the sub-lessee of plaintiff.
Defendant further pleads in reconvention that he employed the services of plaintiff to act as his agent; that he paid some Nine Thousand and no/100 ($9,000.00) Dollars in expenses; that plaintiff defrauded him by inflating the expense account; and that he had considerable trouble coercing plaintiff to deliver the instrument of June 26, 1956 to defendant.
The plaintiff then filed a rule for judgment on the pleadings, which rule was denied by the judge of the lower court. He gave written reasons for his judgment on P. 131 of Volume 1 of the transcript. Suffice to say that the trial judge of the lower court felt that inasmuch as this was a suit under the Uniform Declaratory Judgment Act of Louisiana which would clear up numerous differences between the litigants, the matter should be heard and disposed of on the merits.
Before judgment on the rule for judgment on the pleading, the defendant filed a supplemental and amended answer and recon-ventional demand.
The matter was tried and submitted to the trial judge who rendered judgment with written reasons therefor on November 2, 1959 in favor of the plaintiff and against the defendant. This judgment cancelled, terminated and forfeited the sublease from the plaintiff, Albert J. McDonald to the defendant Robert .W. O’Meara, dated June 26, 1956 and reserved to the plaintiff the right to sue Robert W. O’Meara for such damages and expenses as he may have incurred as a result of O’Meara’s violation at the time of the sublease.
From the judgment, the defendant, O’Meara, prosecutes this appeal and alleges that the District Court erred in the following respect:
1. In failing to hold that Robert W. O’Meara, defendant-appellant has fulfilled, or was in the process of fulfilling the obligations contracted by Albert J. McDonald under the terms of the leases and contracts entered into with the original lessors.
2. In failing to hold that the instrument of transfer from Albert J. McDonald to Robert W. O’Meara was in fact an assignment rather than a sublease, as the court so held it to be.
3. In failing to find that Albert J. McDonald was, in truth and in fact, an agent of Robert W. O’Meara, defendant-appellant, and that the leases which are the subject of this litigation were acquired by Albert J. McDonald as agent for, and on behalf of the said Robert W. O’Meara.
In connection with the first specification of error, pertinent part of this agreement reads as follows:
“O’Meara agrees that neither he, his heirs, sub-lessors, or assigns, or any person or persons holding under them will acquire, hold or exercise any right, title or other ownership interest adverse to McDonald or any of McDonald’s ancestors in title.
“O’Meara further agrees that should he, or any person or persons holding-under him, acquire any right, title or ownership interest, to all or any part of the lands described herein from persons-other than Albert J. McDonald, any such right, title or other ownership interest, including by lease, or other contractual agreement, such right, title or other ownership interest, however acquired, shall ipso facto be subject to the one-eighth (i/&) overriding royalty of the whole, hereinabove reserved by-Albert J. McDonald.
* * * * * *
*285 “In the event McDonald believes the obligations of the said contracts are not being performed according to the terms, he shall, in the manner provided hereunder, notify O’Meara of the ground relied on as constituting a breach of the obligations assumed by O’Meara, and the said O’Meara shall have thirty (30) days to cure said breach, and his failure to do so shall terminate all rights acquired by the said O’Meara. Service provided for herein shall have the same effect as had service been made against O’Meara, his heirs, sub-lessors or assigns.
“O’Meara binds and obligates himself to keep McDonald informed in writing as to all action taken by him, or anyone holding under him in any way relating to the property or contracts set out herein, and further he shall furnish McDonald with certified copies of all documents, maps and other data pertinent to same at the same time said action is taken, or such data or documents are had by him.”
The record shows that there was an action to establish title filed by Eugene D. Broussard et al versus Robert J. Walker, et al No. 17,521 on the docket of the Seventeenth Judicial District Court seeking to have the plaintiffs recognized as the owners of a portion of the property covered by the aforesaid seven leases. The defendant did not put up any defense' to this suit until after the plaintiff, McDonald, had intervened in said suit to join in the defense of the same. The defendant then filed an answer adopting the defense put up by McDonald.
There is no question but what McDonald gave the defendant O’Meara the thirty days notice required for the cancellation of the sub-lease.
The trial judge found the default on the part of Mr. O’Meara in keeping his contract of lease with Mr. McDonald is amply shown by the facts of the case and is again supported by the very pleadings of the defendant wherein he affirmatively demonstrates that he had no intention of abiding by the lease contract. As a matter of fact, he was acting and pretending to be the “Owner” instead of a “Lessee.”
LSA-Revised Civil Code, Art. 2729 reads as follows:
“The neglect of the lessor or lessee to fulfill his engagements, may also give cause for a dissolution of the lease, in the manner expressed concerning contracts in general, except that the judge can not order any delay of the dissolution.”
We see no merit, therefore, in specification of errors No. 1.
The second error complained of is that the trial judge held that the instrument of transfer from Albert J. McDonald to Robert W. O’Meara was a sublease instead of an assignment.
There is ryp question but what the contract between the parties reserved to McDonald an overriding one-eighth (y&th) royalty interest in the oil, gas, and minerals produced in the lands covered by the various leases.
Our courts have differentiated between the assignment of lease and a sublease. An assignment is where all of the mineral interest owned by the assignor is transferred, and a sublease is one in which the lessor retains a portion of the minerals from the land subject to the leases.
A landmark case in Louisiana is Roberson et al. v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264 (1931). This case discussed the well-settled distinction between a sublease and an assignment of a lease in the following terms:
“Our opinion, therefore, is that the transaction between the defendant and Pipes & Mack was merely an assignment of the lease on the 40 acres of land, and not a sub-lease. The reason *286 for that is that the defendant thereby disposed absolutely of its interest in the lease on the 40 acres of land, and left no contractual relation whatever between the parties, or obligation on the part of the assignee in favor of the assignor. If the Pioneer Gas Company had retained an overriding royalty, or excess royalty, to he paid by Pipes & Mack to the Pioneer Gas Company, in addition to the one-eighth royalty to be paid by Pipes & Mack to the original lessors, the contract between the Pioneer Gas Company and Pipes & Mack would have been a sublease and not merely an assignment of the lease on the 40 acres of land. See Smith v. Sun Oil Company, 165 La. 907, 116 So. 379, 380, and Johnson v. Moody, 168 La. 799, 123 So. 330. The distinction between an assignment of a lease and a sublease is that in an assignment, the assignor transfers his entire interest in the lease in so far as it affects the property on which the lease is assigned; whereas in a sublease, tSe original lessee, or sublessor, retains an interest in the lease in so far as it affects the property subleased — by imposing some obligation upon the sub-lessee in favor of the sublessor, such as an obligation to pay additional rent to the sublessor. Robinson v. Freret, 9 La.Ann. 303; Audubon Hotel Co. v. Braunnig, 120 La. 1089, 46 So. 33, 124 Am.St.Rep. 456; Rev.Civ.Code Art. 2725; Code Napoleon, Art. 1717, Baudry-Lacantinerie, vol. 20, p. 616, No. 1052 and 1053; Beaudant, p. 374, No. 531 and 532, Marcade, vol. 6, p. 112; Aubrey et Rau, vol. 5, p. 336. The reason why an obligation to pay an overriding royalty, or excess royalty, in a transfer of a lease, either in whole or in part, and even though the [lease] transaction be called an assignment or a sale of the lease, characterizes the transaction as a sublease, and not merely an assignment, is that in oil and gas leases, under the settled jurisprudence of this state, the payment of a royalty is the payment of rent, and is not the payment of a price for the oil or gas rights, as if they were sold. See Spence v. Lucas, 138 La. 763, 70 So. 796; Logan v. State Gravel Co., 158 La. 105, 103 So. 526; Board of Commissioners of Caddo Levee District v. Pure Oil Co., 167 La. 801, 120 So. 373. In Smith v. Sun Oil Company, and in Johnson v. Moody, supra, we said that the obligation to pay an overriding royalty, in the contract, which, in each of those cases, the parties called an assignment, was imposed upon the so-called assignee [or sub-lessee] ‘under penalty of reversion’ to the original lessee or sublessor; but we did not use the term ‘reversion’ in the technical sense in which it is used at common law. The reversion which we had in mind was merely the reversion of the right of occupancy or use of the property; because a contract of lease, under the civil law, unlike the common law in that respect, does not convey to the lessee, temporarily, a title to the property leased, but conveys only the right to use or the enjoyment of the property. Rev.Civ.Code, Arts. 2669, 2674; Logan v. State Gravel Co., 158 La. 105, 103 So. 526.” (Italics supplied)
“A transfer by which the holders of an oil lease disposed absolutely of their interest in lease or part of the land without retaining an overriding royalty constituted an ‘assignment’ and not an ‘sublease.’—Tomlinson v. Thurmon, 181 So. 458, 189 La. 959, annulling 181 So. 206 (1937).
“In an assignment, the assignor transfers his entire interest in a mineral lease, in so far as it affects the property on which the lease is assigned where in a sub-lease, the original lessee, or sub-lessor, retains an interest in the lease, in so far as it affects the property sub-leased, but imposing some obligation on sub-lessee in favor of sub-lessor such as an obligation to pay additional rent to sub-lessor. Wier v. *287 Glassell, 44 So.2d 882, 216 La. 828 (1950).
“Regardless of any other rights which a mineral lease may retain, whether it be a right to control forfeiture or preservation of the lease or right of reversion, if there is retention and reservation of an overriding royalty, such is sufficient of itself to stamp the transfer as a ‘sublease’. Broussard v. Hassie Hunt Trust, 91 So.2d 762, 231 La. 474 (1956).
“Terms of instruments established that transfers from oil and gas lessee to transferee and from transferee to defendant though dominated assignments were in legal effect ‘subleases’ where overriding royalties as well as various other controls were reserved to the transferor in each instrument hence lessor was not entitled to cancellation of the lease as against the defendant for failure properly to develop the same, since there was no privity of estate nor of contract between the lessor and the defendant. Id.”
This line of jurisprudence has been followed by our courts ever since.
“A transfer by which the holders of an oil lease disposed absolutely of their interest in lease or part of the land without retaining an overriding royalty constituted an ‘assignment’ and not an ‘sublease.’ Tomlinson v. Thurmon, 181 So. 458, 189 La. 959, annulling 181 So. 206” (1937).
“In an assignment, the assignor transfers his entire interest in a mineral lease, in so far as it affects the property on which the lease is assigned where in a sub-lease the original lessee, or sub-lessor, retains an interest in the lease, in so far as it affects the property sub-leased, but imposing some obligation on sub-lessee in favor of sub-lessor such as an obligation to pay additional rent to sub-lessor. Wier v. Glassell, 44 So.2d 882, 216 La. 828 (1950).
“Regardless of any other rights which a mineral lease may retain, whether it be a right to control forfeiture or preservation of the lease or right of reversion, if there is retention and reservation of an overriding royalty, such is sufficient of itself to stamp the transfer as ‘sublease’. Broussard v. Hassie Hunt Trust, 91 So.2d 762, 231 La. 474 (1956).
“Terms of instruments established that transfers from oil and gas lessee to transferee and from transferee to defendant though dominated assignments, were in legal effect ‘subleases’ where overriding royalties as well as various other controls were reserved to the transferor in each instrument hence lessor was not entitled to cancellation of the lease as against the defendant for failure properly to develop the same, since there was no privity of estate nor of contract between the lessor and the defendant. Id.”
The court therefore is definitely of the opinion that the instrument which is the subject of this suit is a sublease and not an assignment.
The defendant O’Meara plead fraud and sought reformation of the contract of June 26, 1956. He sought in a reconven-tional demand to have the mineral reservations stricken from the said contract and the document reformed to show the transfer to him without the .reservation of one-eighth (Msth) royalty in favor of McDonald. He contended that McDonald was the Agent of O’Meara and was obligated to transfer the leases to O’Meara free from override.
The defendant O’Meara, relies upon written evidence, namely McDonald’s letters, of January 11th, and February 19th, 1956 as proof of McDonald’s agency. These two letters clearly show that there *288 was no agency between these parties and that McDonald was acting independently and further indicates that O’Meara was not even obligated to accept any leases that McDonald might acquire. O’Meara’s obligation was merely to reimburse McDonald for any and all expenses incurred up to the time of O’Meara’s rejection of the leases.
We are satisfied that the documentary evidence relied upon by the defendant falls far short of showing the alleged agency and certainly does not warrant reformation of the contract as requested in the defendant’s reconventional demand.
We see no reason to disturb the findings of the lower court in this respect.
For these reasons it is ordered that the judgment of the lower court be affirmed.
Affirmed.