205 So.2d 147 (1967)
BERWICK MUD COMPANY, Inc., Plaintiff-Appellant,
v.
Beulah Hebert STANSBURY et al., Defendants-Appellees.
No. 2095.
Court of Appeal of Louisiana, Third Circuit.
October 27, 1967.
Rehearing Denied January 11, 1968.
*148 Aycock, Horne, Caldwell & Coleman, by Jack C. Caldwell, Franklin, for plaintiff-appellant.
Kibbe, Edwards, Cooper & Sonnier, by Silas B. Cooper, Abbeville, for defendants-appellees.
Before FRUGÉ, HOOD and CULPEPPER, JJ.
FRUGÉ, Judge.
The plaintiff-appellant, as the assignee of two mineral leases, brought an action in warranty against the defendant-lessors to recover part of the price paid for the two leases executed on a certain 388-acre tract of land. The judgment being not in its favor, the plaintiff therefore brought this appeal.
The essential facts are a matter of record and are not disputed here. A mineral lease, bearing a three year primary term, was executed by Beulah Stansbury and Effie Stansbury (defendants-appellees) on January 16, 1962, in favor of the Midwest Oil Corporation and Cabot Corporation (hereinafter referred to as Midwest and Cabot), covering "That certain tract of land containing 388 acres, more or less * * *," with full warranty of title. The price of the lease was $17,460.00, computed at $45.00 per acre, and the lease provided for delay rentals in the same amountthat is, $45.00 per acre after the primary term.
Effie Stansbury owned a 30/388ths of the mineral rights to that land and Landry Stansbury, Beulah Stansbury's deceased husband, owned the land in full ownership and the remainder of the minerals. Upon Landry Stansbury's death, an undivided one-half interest in the land and one-half of the remaining minerals inured to his widow, Beulah Stansbury, in full ownership, and the other undivided one-half interest vested in his two minor children, with their mother, Beulah, holding the legal usufruct thereon. Thus, the first lease could not and did not affect the interests of the minor children since Beulah Stansbury did not sign the first lease both in her own name and as tutrix for the two children. See Gueno v. Medlenka, 238 La. 1081, 117 So.2d 817 (1960).
The lessees entered into a "farm-out" agreement with plaintiff. At about this same time, Berwick Mud Company conducted a title examination and discovered the outstanding one-half interest in the *149 minor children, and so it procured a lease from Beulah Stansbury in her capacity as tutrix of the minor children covering their undivided one-half interest. The second lease was obtained through Midwest and Cabot, who were then still the record lessees, and this lease was signed on November 20, 1962. The price of the second lease was $8,730.00, which amount was paid by Berwick Mud. Thereafter, in April, 1963, a formal act of assignment between Midwest and Cabot and Berwick Mud Company was recorded. This act of assignment covered both leases and provided that it was made "without warranty * * *, but with full substitution and subrogation to all the rights of warranty and all other rights held by Assignors, including * * * all the warranty rights of Lessees against the Lessors in said oil, gas and mineral leases, as expressly set forth in Paragraph 10 thereof, or as implied by law, or both."
Berwick Mud contends that the warranty provision of the first lease in favor of Midwest and Cabot inures to its benefit by virtue of the provisions of the act of assignment.
It is well settled that the assignment of a lease is a sale of a real right. See R.S. 9:1105; Tomlinson v. Thurmon, 189 La. 959, 181 So. 458 (1938); Hatch v. Morgan, 12 So.2d 476 (La.App.2d Cir.1942). Therefore, Berwick Mud has become "subrogated to the seller's rights and actions in warranty against all others." C.C. Art. 2503. Furthermore, the act of assignment itself specifically subrogates Berwick Mud to all the rights and actions of Midwest and Cabot. As a result, Berwick Mud stands in the shoes of Midwest and Cabot as the original lessees. So, the rights and obligations of the plaintiff and defendants are to be governed by the mineral lessor-lessee relationship and are to be determined from the lease agreement itself insofar as is possible.
On its face the first lease granted by Beulah Stansbury purports to cover the entire interest in the land. Likewise, the warranty provision in that lease stating that the "lessor hereby warrants and agrees to defend the title to said lands * * *" is also unrestricted and must be concluded as an absolute guarantee of full and complete ownership in Beulah Stansbury and Effie Stansbury as co-signers of the first lease. Therefore, Beulah Stansbury warranted the entire interest or full ownership in the property, whereas she was only half owner in indivision.
The defendants alleged neither mutual error nor fraud in defense of the suit, and thus no extrinsic evidence could properly be admitted to determine the intent of the parties in signing the lease agreement, for the lease must stand as evidence of itself. C.C. Art. 2276; Hatch v. Morgan, supra. The defendants did argue that in reading the first lease together with the second lease, the provisions of the first lease became ambiguous and therefore parol testimony should be admitted to determine the intent of the parties signing the lease. But the trial court found that the first lease was not ambiguous, and we fully agree with that finding; thus, extrinsic evidence to show the intention of the parties in signing the lease is inadmissible.
This point becomes academic in view of the facts of this case because, although the trial court permitted extrinsic evidence to be introduced to show the intent of the parties, the defendants did not take the stand, nor was any other evidence produced by the defendants showing an intent contrary to that evidenced from the provisions of the lease itself. On the other hand, the president of the plaintiff corporation testified and stated that he had believed that he received a full interest lease and that his assignors had the same belief. So, because we find that the first mineral lease purports to be a full interest lease, that full title is warranted therein, and that the lease is not ambiguous, we will ignore the parol testimony; and *150 the error of the trial judge in permitting such testimony was a harmless one.
The defendants-appellees strongly urge this court to holdand the trial court did in fact holdthat the first lease purported to cover only the interest of the defendants in that property although the lease is written in broad and absolute terms. They stress the fact that often mineral companies lease fractional interests without specifying the fraction of that interest because of the possible danger of making an error in computation of the precise and often complicated interests of each of the parties. While this may be true, in most cases where a mineral lease is not intended to be a full interest lease, there is (and should be) provision made somewhere in the lease to the effect that the lessor leases all his interest in the lease or warrants title to all land he has leased as his interest may appear therein. Such provisions constitute notice to the lessee that the lessor does not claim to be owner of the entire interest and protect the lessee under the warranty provision from liability to any extent greater than his actual interest in the minerals. To accept the appellees' argument on this point is to give an unqualified warranty provision of a mineral lease practically no effect at all and thereby render the lessee no protection other than that provided for by law.
Signatures upon legal documents are not mere ornaments. A legal agreement becomes the law as between the parties on the subject matter covered by the agreemen, and none but the parties themselves can abrogate or modify it. C.C. Art. 1945. Perhaps the appellees intended to lease only their actual interest in the property, but that is not the agreement entered into by the parties and evidenced by the lease itself. Furthermore, it is not within the competence of this court to determine their intent extrinsically since no plea of mutual error or fraud was made and since the lease is not ambiguous. We must assume that they intended to grant a full interest lease and to warrant full title thereto. This being what they undertook to do, we are powerless to alter or abrogate that agreement.
Having discovered the outstanding interest of the children in the property leased and knowing that it could not begin or continue drilling operations on the leased property until a lease on all outstanding interest was obtained by it, the plaintiff undertook to cure the defect by obtaining a second lease covering the undivided interest of the minor children. The appellees contend that plaintiff should not be allowed to take advantage of this omission of percentage to demand the return of a payment that was honestly due and voluntarily paid, especially since the plaintiff has drilled a dry hole on defendant's property.
We see no merit in appellees' contention on this point. Although the appellant was not compelled to pay for the second lease, nonetheless it was necessary that it obtain that lease before it actually began drilling, for it could at any time have been subjected to litigation or the loss of substantial rights under the lease had it left the interest outstanding and unleased. Further, appellees apparently abandoned their plea of estoppel against plaintiff-appellant. Therefore, we feel that payment to Mrs. Beulah Stansbury in the capacity as tutrix for the minor children in no way precludes the appellant from recovering its damages.
Plaintiff has sought for a return of the price of the second lease ($8,730.00) or, in the alternative, for $7,965.00, which represents the value of the outstanding mineral interest which the first lease was ineffective in granting plaintiff.[1] See C.C. Art. 2133. *151 Since the demand for damages in the amount of $7,965.00 is only an alternative pleathe primary request being for $8,730.00we need not discuss the legal basis upon which plaintiff might be allowed $7,965.00; for we are of the opinion that plaintiff can recover the primary request for damages in the amount of $8,730.00. This latter sum was the expense plaintiff incurred in order to obtain full interest in the minerals which appellees had guaranteed to it in the first lease. The express warranty provision of the lease was intended to give the lessee the same rights as does the warranty of title in a sale of real property. Therefore, actual eviction was not a condition precedent to plaintiff's recovery under the warranty provision. Therefore, this is a case where one being guaranteed full title discovers a defect in that title and undertakes to cure the defect and recover from his warrantor in title the cost incurred by him in curing the defect. See Katz v. Katz Realty Co., 228 La. 1008, 84 So.2d 802 (1955); Pepper v. Dunlap, 5 La.Ann. 200 (1950).
For the foregoing reasons we are of the opinion that the judgment of the trial court should be reversed and plaintiff should be awarded the sum prayed for.
It is therefore ordered, adjudged and decreed that judgment be rendered herein in favor of plaintiff-appellant, Berwick Mud Company, Inc., in the amount of Eight Thousand Seven Hundred Thirty and No/100 ($8,730.00) Dollars against the defendants-appellees Beulah Hebert Stansbury and Effie Stansbury Mayard in the following proportions: Effie Stansbury Mayard, Nine Hundred Thirty-two and 73/100 ($932.73) Dollars, and Beulah Stansbury, Seven Thousand Seven Hundred Ninety-seven and 27/100 ($7,797.27) Dollars, with legal interest from the date of judicial demand; defendants-appellees to pay all costs of these proceedings.
Reversed and rendered.

On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] Since Effie Stansbury owned 30/388ths interest in the minerals, and since Beulah Stansbury and the minor children each held a 179/388th interest in the minerals, then the first lease did not cover 179/388ths of the minerals (the interest of the minor children). As a result, plaintiff seeks to regain 179/388ths of the price paid for the first lease, which plaintiff claims amounts to $7,965.00 (and defendants apparently concede the correctness of this).